William G. MOORE, Jr., Appellant,

v.

Joseph B. VALDER, et al., Appellees.

Nos. 93–5341, 93–5343.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 18, 1995.

Decided Sept. 22, 1995.

Paul M. Pohl, argued the cause for the appellant. On brief was James E. Anklam.

Robert V. Zener, argued the cause for appellees Valder, et al.

Jonathan R. Siegel, Attorney, Department of Justice, argued the cause for appellee United States of America. On brief were Frank W. Hunger, Assistant Attorney General, Eric H. Holder, Jr., United States Attorney, and Barbara L. Herwig, Attorney, Department of Justice. Gordon W. Daiger and Robert M. Loeb entered appearances.

Before: EDWARDS, Chief Judge; WALD and HENDERSON, Circuit Judges.

KAREN LECRAFT HENDERSON, Circuit Judge:

Appellant William G. Moore, Jr. (Moore) appeals the dismissal of his *Bivens* and Federal Tort Claims Act claims against Assistant United States Attorney Joseph B. Valder (Valder), six United States Postal Service Inspectors (postal inspectors)[1] and the United States. Moore sued for injuries allegedly caused by Valder's and the postal inspectors' malicious and retaliatory prosecution of him. We affirm in part and reverse in part.

## I.

Moore was indicted in October 1988 on various counts of theft and fraud. Moore was chairman, president and chief executive officer of Recognition Equipment Incorporated (REI), a company interested in supplying the U.S. Postal Service (USPS) with address-scanning equipment. The indictment charged that Moore and Robert Reedy, another REI employee, engaged in a scheme to defraud the federal government by persuading William Spartin to recommend for the position of United States Postmaster General a candidate who favored using REI's address-scanning equipment. Spartin was both president of Gnau & Associates, Inc. (GAI), a consulting firm hired by REI, and president of a subsidiary of an executive search firm hired by the USPS to identify a qualified candidate to serve as Postmaster General. The indictment also accused Moore and Reedy of participating in a scheme by which GAI employees paid money to Peter E. Voss, a member of the USPS Board of Governors, in return for Voss's steering business to GAI and its clients. REI had hired GAI at the suggestion of Voss. Five co-conspirators, including Voss and John R. Gnau, Jr., the principal of GAI, either pleaded guilty or testified about the fraud pursuant to a grant of immunity.

In November 1989, at the close of the government's case in Moore's criminal non-jury trial, the district court granted Moore's motion for a judgment of acquittal. *United States v. Recognition Equip. Inc.,* 725 F.Supp. 587 (D.D.C.1989). The district court found insufficient evidence to support a reasonable inference that Moore and Reedy knew of either scheme. *Id.* Moore then filed a complaint in the U.S. District Court for the Northern District of Texas against Valder and the postal inspectors, asserting a *Bivens*[2] cause of action for malicious prosecution (malicious prosecution claim) and a *Bivens* claim for prosecution in retaliation for the exercise of his first amendment right (retaliatory prosecution claim).[3] Moore later filed a second complaint in the Northern District of Texas seeking recovery from the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671 *et seq.,* for the same alleged injuries.

In the two complaints Moore alleged that Valder and the postal inspectors maliciously prosecuted him, even though they knew that he was unaware of the fraud, based on his and REI's criticism of USPS procurement policies and on his recommendations to the President of qualified candidates for Postmaster General. In addition, Moore alleged other misconduct, including claims that Valder told several postal inspectors in the presence of a grand jury witness that he did not care whether Moore was in fact guilty because he wanted to secure a "high-profile" indictment to further his career; that Valder and the postal inspectors intimidated and coerced witnesses into changing their testimony to incriminate Moore; that they concealed evidence of Moore's innocence; that they manipulated witness testimony and presented to the grand jury false, incomplete and misleading written witness statements; that they lost, destroyed or concealed from the grand jury exculpatory information; that they disclosed grand jury testimony to third

---

1. The postal inspector defendants-appellees are Michael Hartman, Frank Korman, Robert Edwards, Pierce McIntosh, Daniel Harrington and Norman Robbins.

2. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (recognizing a cause of

action for damages against officials who violate constitutional or statutory rights under color of federal law).

3. The complaint also asserted other constitutional and common-law tort claims which were dismissed by the district court. Moore does not appeal the dismissal of those claims.

parties; and that Valder withheld material exculpatory information from Moore after indictment. ·

The district court dismissed the *Bivens* claims against Valder, holding that he was protected by absolute immunity. The court denied the postal inspectors' motion to dismiss the *Bivens* claims against them on the ground of qualified immunity and then transferred the remaining claims to the U.S. District Court for the District of Columbia, concluding that it lacked in personam jurisdiction. The FTCA complaint was also transferred and the parties stipulated to the consolidation of the two cases by the district court here.

The district court first denied Moore's motion to return the complaints to the Northern District of Texas. The court then dismissed the *Bivens* claims against the postal inspectors because Moore's complaint did not recite direct evidence of their alleged unconstitutional motive and therefore did not satisfy a heightened pleading standard. The court also dismissed the FTCA claims for lack of subject matter jurisdiction, holding that the alleged misconduct fell within the FTCA's discretionary function exception.

## II.

On appeal Moore contends that Valder is not entitled to absolute immunity; that the court erred in applying a heightened pleading standard to his *Bivens* complaint; and that the FTCA's discretionary function exception does not preserve the United States's sovereign immunity from liability for the alleged misconduct. In analyzing his claims, we group the specific misconduct alleged by Moore into four categories: pressuring witnesses into incriminating Moore; concealing and distorting exculpatory evidence to create misleading or incomplete witness accounts of what Moore knew about the alleged fraud; [4]

withholding material exculpatory information from Moore after indictment; and disclosing grand jury testimony to unauthorized third parties.

### A. Claims Against Valder

█ The district court dismissed Moore's *Bivens* claims against Valder, holding that Valder was protected by absolute immunity.[5] We review *de novo* a dismissal for failure to state a claim upon which relief can be granted but accept the facts as alleged in the complaint. *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276, 1273 (D.C.Cir. 1994). We hold that absolute immunity shields Valder from liability for the decision to prosecute Moore and for some, but not all, of the other alleged instances of misconduct.

█ In several decisions the Supreme Court has considered whether and to what extent a state or local prosecutor *qua* prosecutor is immune from liability under 42 U.S.C. § 1983. As the Court has recognized, the law of immunity in a *Bivens* claim against a federal official mirrors that in a section 1983 claim against a state official. *See, e.g., Butz v. Economou*, 438 U.S. 478, 504, 98 S.Ct. 2894, 2909–10, 57 L.Ed.2d 895 (1978) (deeming it "untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials"); *see also Briggs v. Goodwin*, 569 F.2d 10, 17–18 n. 8 (D.C.Cir.1977) ("*[A]ssuming* the rule of *Bivens* comprehends a damage action for a particular constitutional infringement by a federal officer, the federally-determined immunity applicable in such a case should be no different from the federally-determined immunity available in a § 1983 suit against a state official.") (emphasis origi-

---

4. We do not read Moore's complaint to allege that Valder or the postal inspectors *manufactured* false evidence to incriminate Moore. The complaint, construed favorably to Moore, alleges only that the written witness statements, prepared by Valder and the postal inspectors and submitted to the grand jury, created false impressions because they omitted important exculpatory testimony. Joint Appendix (JA) 377–78.

5. According to the district court, "Valder was performing judicial and quasi-judicial functions. All of Valder's conduct relevant to this case was preparatory to presenting a case against Moore to the grand jury. The face of the complaint compels the conclusion that all of the acts attributed to Valder were prosecutorial functions...." JA 340.

nal). Accordingly, we look to those decisions for guidance.

In *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the Supreme Court held that a prosecutor enjoys absolute immunity from section 1983 liability when he acts "as an advocate" by engaging in activities "intimately associated with the judicial phase of the criminal process." *Id.* at 430, 96 S.Ct. at 995. As the Court in *Imbler* noted, the common law afforded absolute immunity to prosecutors for several reasons. Immunity encourages vigorous decisionmaking by reducing, if not eliminating, liability's inhibitory effect, *id.* at 424–25, 96 S.Ct. at 992–93; it protects prosecutors against having "to answer in court each time [a defendant] charge[s] him with wrongdoing [which diverts] his energy and attention ... from the pressing duty of enforcing the criminal law," *id.* at 425, 96 S.Ct. at 992; and it ensures that judges are not influenced "by even the subconscious knowledge that a posttrial decision in favor of the accused might result in the prosecutor's being called upon to respond in damages for his error or mistaken judgment." *Id.* at 427, 96 S.Ct. at 993. Alternative mechanisms, such as the trial judge's remedial powers, appellate review and post-conviction collateral remedies, exist to remedy injury caused by prosecutorial misconduct. *Id.* In addition, there are alternative ways to deter and punish prosecutorial misconduct, such as subjecting the prosecutor to criminal prosecution or professional discipline. *Id.* at 429, 96 S.Ct. at 994.

The Court in *Imbler* held that "the same considerations of public policy that underlie the common-law rule likewise countenance absolute immunity under § 1983." *Id.* at 424, 96 S.Ct. at 992. At a minimum, advocatory conduct includes "initiating a prosecution" and "presenting the State's case." *Id.* at 431, 96 S.Ct. at 995–96.[6] Recognizing that "the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom," the Court acknowledged that distinguishing between action taken as an advocate and action taken as an administrator or investigator "may present difficult questions." *Id.* at 431 n. 33, 96 S.Ct. at 996 n. 33.

The line between advocatory conduct and administrative or investigative activity was refined in *Burns v. Reed*, 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). Using a "functional approach," the Court emphasized that lower courts must look at the nature of the function performed, not the identity of the person performing it, to determine if a prosecutor is clothed with absolute immunity. The prosecutor must establish that the *conduct* under review was advocatory in nature. *Id.* at 486, 111 S.Ct. at 1939. The Court held that participation in a probable cause hearing ("appearing before a judge and presenting evidence in support of a motion for a search warrant") is protected by absolute immunity but giving legal advice to police officers is not. "Absolute immunity is designed to free the judicial process from the harassment and intimidation associated with litigation. That concern therefore justifies absolute prosecutorial immunity only for actions that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct." *Id.* at 494, 111 S.Ct. at 1943–44. The Court warned that "[a]lmost any action by a prosecutor, including his or her direct participation in purely investigative activity, could be said to be in some way related to the ultimate decision whether to prosecute, but we have never indicated that absolute immunity is that expansive." *Id.* at 495, 111 S.Ct. at 1944.

Most recently, the Court discussed the scope of absolute prosecutorial immunity in *Buckley v. Fitzsimmons*, —— U.S. ——, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). There, the Court reaffirmed that "as the function test of *Imbler* recognizes, the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor." *Id.* at ——, 113 S.Ct. at 2615. Advocatory conduct protected by absolute immunity "include[s] the professional evaluation of the

---

6. Additionally, "whether to present a case to a grand jury, whether to file an information, whether and when to prosecute, whether to dismiss an indictment against particular defendants, which witnesses to call, and what other evidence to present" are advocatory decisions. *Imbler*, 424 U.S. at 431 n. 33, 96 S.Ct. at 996 n. 33.

evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." *Id.* But when a prosecutor "performs the investigative functions normally performed by a detective or police officer," he is entitled only to the qualified immunity that the detective or police officer enjoys. *Id.* at ——, 113 S.Ct. at 2616–17.

In *Buckley,* the petitioner alleged that the prosecutors fabricated evidence during the preliminary investigation of a crime and made false statements at a press conference announcing the indictment of the petitioner. The Court held that the prosecutors did not have absolute immunity from liability for the alleged fabrication of evidence because they did not have probable cause to arrest or to initiate judicial proceedings. *Id.* at ——, 113 S.Ct. at 2616. "Their mission at that time was entirely investigative in character. A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Id.* The Court emphasized that the alleged fabrication occurred before a grand jury was convened and that when the grand jury eventually was convened, "its immediate purpose was to conduct a more thorough investigation of the crime—not to return an indictment against a suspect whom there was already probable cause to arrest." *Id.* The Court also held that a prosecutor is not absolutely immune from liability for making allegedly false statements to the press because statements to the media "have no functional tie to the judicial process." *Id.* at ——, 113 S.Ct. at 2618.

■ Applying these holdings here, we conclude that Valder's prosecutorial immunity insulates him from liability for his unquestionably advocatory decision to prosecute Moore. His prosecutorial immunity also protects Valder from liability for allegedly concealing exculpatory evidence from the grand jury and for allegedly manipulating evidence before the grand jury to create a false impression of what Moore knew about the alleged fraudulent schemes. Valder's decisions regarding what evidence to put before the grand jury, and in what manner, are advoca-

tory because they are central to the prosecutor's task of "initiating a prosecution" and "presenting the State's case." *Imbler,* 424 U.S. at 431, 96 S.Ct. at 996; *see also Hill v. City of New York,* 45 F.3d 653, 661–62 (2nd Cir.1995) (holding absolute immunity protects prosecutor from liability for withholding exculpatory evidence from grand jury). In addition, withholding after indictment information that is subject to disclosure under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), is advocatory. In *Imbler,* the prosecutor was alleged to have knowingly used false testimony and suppressed material exculpatory evidence at trial. The Court upheld the lower courts' rulings that the prosecutor was absolutely immune from potential liability for the alleged misconduct. As other courts have recognized, it follows from *Imbler* that the failure, be it knowing or inadvertent, to disclose material exculpatory evidence before trial also falls within the protection afforded by absolute prosecutorial immunity. *See Hill,* 45 F.3d at 662 (holding failure to turn over *Brady* material "after prosecutorial phase" of case had begun was covered by absolute prosecutorial immunity); *Carter v. Burch,* 34 F.3d 257, 262 (4th Cir.1994) (holding absolute immunity protects prosecutor from liability for failing to give defense counsel materially exculpatory evidence).

■ Valder, however, has not met his burden of establishing that absolute immunity protects him from potential liability for the other instances of misconduct alleged by Moore. Intimidating and coercing witnesses into changing their testimony is not advocatory. It is rather a misuse of *investigative* techniques legitimately directed at exploring whether witness testimony is truthful and complete and whether the government has acquired all incriminating evidence. It therefore relates to a typical police function, the collection of information to be used in a prosecution. *See, e.g., Barbera v. Smith,* 836 F.2d 96, 100 (2d Cir.1987) (holding "*acquiring* evidence which might be used in a prosecution," in contradistinction to "*organization, evaluation, and marshalling*" of such evidence, is activity of "police nature" and is therefore not entitled to absolute protection)

(emphasis original). "When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is 'neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.'" *Buckley*, —— U.S. at ——, 113 S.Ct. at 2616 (quoting *Hampton v. Chicago*, 484 F.2d 602, 608 (7th Cir.1973), *cert. denied*, 415 U.S. 917, 94 S.Ct. 1413, 1414, 39 L.Ed.2d 471 (1974)).[7]

■ Finally, disclosing grand jury testimony to unauthorized third parties is not advocatory because it has no functional tie to the judicial process—it does not contribute to the government's case before a grand or petit jury. Like making statements at a press conference, unauthorized disclosure "does not involve the initiation of a prosecution, the presentation of the state's case in court, or actions preparatory for these functions." *Buckley*, —— U.S. at ——, 113 S.Ct. at 2618.[8]

### B. Claims Against the Postal Inspectors

■ The district court dismissed Moore's claims against the postal inspectors because

7. And as the Supreme Court explained:
   A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as "preparation" for a possible trial.... When the functions of prosecutors and detectives are the same ... the immunity that protects them is also the same.
   *Buckley*, —— U.S. at ——, 113 S.Ct. at 2617.

8. While we conclude that absolute immunity does not protect Valder, he of course would be entitled to any qualified immunity available to the postal inspectors. Qualified immunity protects a government official who performs discretionary functions from liability for civil damages if he can show that his actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

9. As an initial matter, we reject Moore's argument that the district court here was precluded from reconsidering the Texas district judge's conclusion that Moore had "asserted a set of facts supporting each claim that, if found to be true regarding the element of malice, would overcome defendants' qualified immunity defense and entitle him to relief." JA 343–44. We first observe that the Texas district judge should not

Moore's complaint did not allege direct evidence that they acted maliciously or in retaliation for constitutionally protected speech. Reviewing the dismissal *de novo* and taking the facts as alleged in Moore's complaint, *Kowal*, 16 F.3d at 1276, 1273, we affirm the dismissal of the malicious prosecution claim but hold that the district court erred in dismissing Moore's retaliatory prosecution claim.[9]

■ The district court did not address whether Moore's *Bivens* claims alleged the violation of clearly established law.[10] The court, therefore, "erred in deciding the heightened pleading issue before deciding the *threshold* 'essentially legal question whether the conduct of which the plaintiff complains violated clearly established law.'" *Kartseva v. Department of State*, 37 F.3d 1524, 1530 (D.C.Cir.1994) (quoting *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) (emphasis original)). Furthermore, it has not been clearly established that malicious prosecution violates any constitutional or statutory right.[11] Accord-

have ruled on the immunity issue because he found that he lacked personal jurisdiction over the postal inspectors. More importantly, we iterate that the district court below is bound to follow the law of *this* circuit. *See, e.g.*, 1B *Moore's Federal Practice* ("The district courts owe obedience, each to the court of appeals in its own circuit. It may happen, therefore, that a decision in the transferor court is in accordance with the view of the law as established by the court of appeals in its own circuit, but in the transferee circuit the law is either unsettled, or settled to the contrary.... If the issue has been settled ... the transferee court finds itself suspended between the doctrine of stare decisis and the doctrine of the law of the case. In such a circumstance the transferee court would invite reversal if it did not follow the decisions of its own court of appeals.").

10. The parties appear to agree that prosecution in retaliation for speech protected by the first amendment violates a clearly established right. *See infra* note 12. Although the parties disputed whether the malicious prosecution claim survived the qualified immunity defense, the district court expressly found that it "need not address the question" because of its ruling that Moore's allegations were otherwise deficient. JA 355.

11. *See Sami v. United States*, 617 F.2d 755, 773 (D.C.Cir.1979) (citing with approval cases holding that "it takes more than a false arrest or

ingly, the postal inspectors' qualified immunity defeats Moore's malicious prosecution claim. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. Moore's *retaliatory* prosecution claim, however, does allege the violation of clearly established law.[12]

In publicly criticizing the USPS Moore unquestionably exercised his first amendment rights. Record evidence manifests that the criticism produced hostility in USPS management. Joint Appendix (JA) 154–156, 283. Two of the postal inspectors, who reported to USPS management, heard and did not repudiate Valder's declaration that Moore's innocence was irrelevant to the prosecution he intended to pursue. JA 32. These facts taken together constitute evidence sufficient to meet any applicable heightened pleading standard[13] and, accordingly, we remand Moore's retaliatory prosecution claim against the postal inspectors.

## C. *Claims Against the United States*

The district court dismissed Moore's FTCA claims for lack of subject matter jurisdiction, holding that the alleged misconduct fell within the FTCA's "discretionary function" exception. We review the dismissal *de novo* but construe Moore's allegations in his favor. *Hohri v. United States,* 782 F.2d 227, 241 (D.C.Cir.1986), *vacated on other grounds,* 482 U.S. 64 (1987).[14] We hold that only some of the alleged misconduct is covered by the exception.

The FTCA waives the sovereign immunity of the United States from suits for negligent or wrongful acts of government employees subject to certain exceptions. *See* 28 U.S.C. §§ 2671–2680. The "discretionary function" exception protects the federal government from liability for "[a]ny claim based upon ... the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The exception "preserves the preexisting cloak of governmental immunity for some category of activities." *Gray v. Bell,* 712 F.2d 490, 508 (D.C.Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984). We "must examine carefully the allegations made to determine whether they are sufficiently separable from protected discretionary decisions. If such separability exists, then the conduct of the prosecutor may be actionable under the FTCA." *Id.* at 515. But where the "allegation of improper investigatory conduct is inextricably tied to the decision to

malicious prosecution claim to rise to the dignity of a constitutional violation"); *see also McLaughlin v. Alban,* 775 F.2d 389, 392 (D.C.Cir.1985) (concluding that plaintiff must "show not merely a mistaken prosecution or even a common law tort, but the violation of a constitutional right" to establish section 1983 claim); *Torres v. Superintendent of Police of Puerto Rico,* 893 F.2d 404, 409 (1st Cir.1990) (holding section 1983 provides remedy only if plaintiff proves elements of malicious prosecution under state law and establishes that misuse of the legal proceedings was so egregious that he suffered deprivation of rights secured by fourteenth amendment) (citations omitted).

**12.** *See, e.g., Haynesworth v. Miller,* 820 F.2d 1245, 1255–57 (D.C.Cir.1987) (agreeing that "retaliatory prosecution [allegedly initiated solely because plaintiff refused to release civil claims of police misconduct against arresting officers] constitutes actionable First Amendment wrong"); *see also Norwell v. Cincinnati,* 414 U.S. 14, 16, 94 S.Ct. 187, 188, 38 L.Ed.2d 170 (1973) (per curiam) (finding first amendment violation in retaliatory prosecution for "nonprovocatively voicing [ ] objection" to police conduct); *De-*

*Loach v. Bevers,* 922 F.2d 618, 620 (10th Cir. 1990) ("An act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper.") (quoting *Matzker v. Herr,* 748 F.2d 1142, 1150 (7th Cir.1984)); *Magnotti v. Kuntz,* 918 F.2d 364, 368 (2d Cir.1990) ("It is undisputed that retaliatory prosecution may expose a state official to section 1983 damages."); *Losch v. Parkesburg,* 736 F.2d 903, 907–08 (3d Cir. 1984) ("[I]nstitution of criminal action to penalize the exercise of one's First Amendment rights is a deprivation cognizable under § 1983.") (citing *Wilson v. Thompson,* 593 F.2d 1375, 1377 (5th Cir.1979)).

**13.** In *Kartseva v. Department of State,* 37 F.3d 1524, 1530–31 (D.C.Cir.1994), we explained this circuit's two-level heightened pleading standard.

**14.** Because we accept Moore's version of the facts, we reject his argument that the district court should not have decided whether the discretionary function exception applied without permitting Moore an opportunity to conduct discovery and develop a "concrete record."

prosecute and the presentation of evidence to the Grand Jury," the discretionary function applies and preserves governmental immunity. *Id.* at 516.

 Deciding whether to prosecute, assessing a witness's credibility to ensure that he is giving an accurate and complete account of what he knows, identifying the evidence to submit to the grand jury and determining whether information is "exculpatory" and "material" and therefore must be disclosed pursuant to a *Brady* request [15] are actions that require the prosecutor to exercise his professional judgment. They are therefore quintessentially discretionary.[16] Accordingly, the United States enjoys immunity from Moore's claims that Valder and the postal inspectors pressured witnesses into incriminating him, concealed and distorted exculpatory evidence to create a false impression of what he knew about the fraud schemes and withheld material exculpatory information from him after the grand jury returned an indictment.

Disclosing grand jury testimony to unauthorized third parties, however, is *not* a discretionary activity nor is it inextricably tied to matters requiring the exercise of discretion. Rather, it is a discrete activity, sufficiently separable from protected discretionary decisions to make the discretionary function exception inapplicable to this allegation. We express no view whether the allegation is otherwise cognizable under the FTCA or whether it is supported by the evidence.

We therefore affirm in part, reverse in part and remand to the district court for proceedings consistent with this opinion.

*So ordered.*

---

15. We recognize that internal regulations of the Department of Justice direct that "when a prosecutor conducting a grand jury inquiry is personally aware of substantial evidence which directly negates the guilt of a subject of the investigation, the prosecutor must present or otherwise disclose such evidence to the grand jury before seeking an indictment against such a person." Department of Justice Manual, 9–11.233 (October 1, 1990). Putting aside the question whether this regulation creates any enforceable right, we note that deciding what this regulation requires under a specific set of circumstances is itself a discretionary act.

16. We are guided by our decision in *Gray* where we held that allegations that the defendants "deliberately present[ed] false and misleading evidence to and with[held] exculpatory evidence from the Grand Jury" are within the discretionary function exception because they are "insufficiently separable from the discretionary decision to initiate prosecution." 712 F.2d at 495, 516.