# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued March 24, 2016        Decided July 12, 2016

No. 15-5208

CARLOS LOUMIET, ESQUIRE,
APPELLANT

v.

UNITED STATES OF AMERICA, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-01130)

*Carlos Loumiet*, *pro se*, argued the cause and filed the briefs for appellant.

*Steve Frank*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, and *Mark B. Stern*, Attorney.

Before: ROGERS and PILLARD, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

PILLARD, *Circuit Judge*: Appellant Carlos Loumiet's participation in a bank audit got him into trouble with the Office of the Comptroller of the Currency (OCC), a bureau within the Department of Treasury. Loumiet claims the OCC's enforcement action against him was trumped-up and retaliatory. On this appeal from the district court's dismissal of the case on the pleadings, we address only the timeliness of his claims, and whether the Constitution places any limit on the governmental policymaking discretion immunized by the discretionary-function exception to the Federal Tort Claims Act (FTCA or the Act).

After prosecuting Loumiet for nearly three years, culminating in a three-week trial, the OCC dismissed its enforcement action against him—an action which this court has since described as not "substantially justified." *Loumiet v. Office of Comptroller of Currency*, 650 F.3d 796, 797-98 (D.C. Cir. 2011). Loumiet then brought suit against the United States and four OCC employees, claiming that their enforcement action and related conduct were both tortious and unconstitutional. The district court dismissed Loumiet's tort claims against the United States under the FTCA's discretionary-function exception and dismissed his constitutional *Bivens* claims against the individual defendants as time-barred.

We conclude, in line with the majority of our sister circuits to have considered the question, that the discretionary-function exception does not categorically bar FTCA tort claims where the challenged exercise of discretion allegedly exceeded the government's constitutional authority to act. Nor are Loumiet's *Bivens* claims time-barred, because the continuing-violations doctrine applies to extend the applicable statute of limitations where, as here, a plaintiff alleges continuing conduct causing cumulative harm.

Accordingly, we reverse the district court's dismissal order and remand for further proceedings.

I

We review the district court's dismissal of Loumiet's claims *de novo*, accepting as true the factual allegations in the complaint. *See Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1250 (D.C. Cir. 2005).

In the early 2000s, Loumiet was on a team of attorneys Hamilton Bank hired to prepare an audit report during a securities-fraud investigation of the bank by the OCC. The final audit report was unable to reach a conclusion as to whether the bank's executives had engaged in intentional wrongdoing. The OCC contested certain of the report's findings, but, after further investigation, Loumiet and his team declined to change their conclusions.

Around that time, Loumiet sent the Treasury Inspector General a series of letters in which he expressed concern that, while on site at Hamilton Bank during the OCC's investigation, OCC employees had made racist remarks regarding the bank's Hispanic employees. The bank filed suit against the OCC in 2002, alleging civil rights violations arising out of the investigation. Shortly thereafter, the OCC closed Hamilton Bank for operating in an unsafe manner—a closure Loumiet alleges was unjustified and incurred considerable unnecessary cost for the bank's receiver, the Federal Deposit Insurance Corporation.

On November 6, 2006, the Comptroller initiated an administrative enforcement proceeding against Loumiet under the Financial Institutions Reform, Recovery, and Enforcement Act, alleging that he was an "institution-affiliated party" who knowingly or recklessly breached his fiduciary duty to

Hamilton Bank when preparing the audit and caused a "significant adverse effect" on the bank. 12 U.S.C. § 1813(u)(4). During the course of the enforcement action against him, Loumiet alleges, OCC personnel made unsubstantiated charges and false statements to the press. On June 18, 2008, after a three-week administrative trial, the presiding Administrative Law Judge recommended dismissal of the OCC's claims in their entirety, and on July 27, 2009, the Comptroller dismissed the action. Later, this court concluded the OCC's enforcement action was not "substantially justified" and awarded Loumiet attorney's fees. *Loumiet*, 650 F.3d at 797.

According to Loumiet's complaint in the action now before us, the OCC's frivolous enforcement proceeding caused significant damage: his banking-law practice evaporated, his income fell significantly, he dropped several partnership levels at his firm, and he suffered severe emotional distress. Seeking compensation for those harms, in 2011 Loumiet filed an administrative unlawful-retaliation claim, which the OCC denied in January 2012. Loumiet filed this suit in federal district court on July 9, 2012. He brought common-law tort claims under the FTCA against the government for intentional infliction of emotional distress, invasion of privacy, abuse of process, malicious prosecution, negligent supervision, and civil conspiracy.[1] He sued the individual government officials under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388

---

[1] Loumiet also asserted many of these same common-law tort claims under the FTCA against the individual defendants, which the district court dismissed pursuant to the Westfall Act, 28 U.S.C. § 2679(d)(1). *See Loumiet v. United States* (*Loumiet I*), 968 F. Supp. 2d 142, 153 (D.D.C. 2013). Loumiet has not appealed that ruling.

(1971), claiming retaliatory prosecution in violation of the First and Fifth Amendments. Loumiet alleged that the officials were "driven by a desire to retaliate" against him in bringing a baseless prosecution that interfered with his "right to communicate with his client free of Government intimidation and punishment." Compl. ¶¶ 138, 141.

The district court granted the defendants' motion to dismiss as to most of Loumiet's claims. *See Loumiet v. United States* (*Loumiet I*), 968 F. Supp. 2d 142, 144-45 (D.D.C. 2013). First, the court concluded that many of Loumiet's FTCA claims were "inextricably tied" to the OCC's decision to prosecute, so must be dismissed pursuant to the FTCA's discretionary-function exception, 28 U.S.C. § 2680(a). *See Loumiet I*, 968 F. Supp. 2d at 156-58. A prosecutorial decision is a quintessential discretionary function even if, in the circumstances of a particular case, the prosecution proceeded unreasonably in light of the paucity of its evidence. *Id.* at 156-57. In the court's view, none of the authorities Loumiet cited "specifically prescribe[d] a course of action for an employee to follow" so as to bar application of the discretionary-function exception here. *Id.* at 157 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)).

Before dismissing Loumiet's FTCA claims on that ground, however, the court explained that those claims, which he filed with the agency on July 20, 2011, were not barred by the FTCA's two-year statute of limitations. *Id.* at 153-55. The malicious-prosecution claim did not accrue until July 27, 2009, when the OCC dismissed the enforcement action, *id.* at 153, and the continuing-violations doctrine delayed accrual of his other FTCA claims until the same date because the enforcement action constituted a continuing harm until its

final disposition, *id.* at 154-55 (citing *Whelan v. Abell*, 953 F.2d 663, 674 (D.C. Cir. 1992)).

Notwithstanding its application of the continuing-violations doctrine to Loumiet's FTCA claims and its characterization of the *Bivens* and FTCA claims as intertwined, the court held that Loumiet had forfeited that doctrine's applicability to his *Bivens* claims. *Id.* at 152 n.3. The claims were barred by the applicable three-year statute of limitations, the court concluded, because the claims accrued when Loumiet knew or had reason to know that the enforcement action was retaliatory and was unsupported by probable cause, which was either when the OCC first filed the action or, at the latest, when the ALJ ruled in his favor four years before Loumiet filed his complaint. *Id.* at 150-51.

On Loumiet's motion for reconsideration, the district court addressed for the first time his allegations that the OCC's decision to prosecute him was unconstitutionally retaliatory and so beyond the governmental policymaking authority protected by the FTCA's discretionary-function exception. *Loumiet v. United States* (*Loumiet II*), 65 F. Supp. 3d 19, 25-26 (D.D.C. 2014). "[E]ven 'constitutionally defective' actions," the court held, "are in fact protected by the discretionary function exception." *Id.* at 25. The court eventually dismissed Loumiet's remaining claims on grounds not pressed before this court. Loumiet timely appealed.

II

We begin with the government's contention that the conduct Loumiet alleges to be tortious under the FTCA involved performance of a "discretionary function" and is therefore immune from liability under the Act. The FTCA provides a limited waiver of the federal government's sovereign immunity from damages liability for torts

committed by federal employees acting within the scope of their employment. *See* 28 U.S.C. §§ 1346(b), 2674. The Act expressly retains immunity from some tort liability through a number of statutory exceptions. *See id.* § 2680. If one of those exceptions applies, the court lacks subject-matter jurisdiction to hear the plaintiff's claims. *See Simmons v. Himmelreich*, 136 S. Ct. 1843, 1846 (2016).

At issue here is the discretionary-function exception, which provides that the Act's waiver of sovereign immunity "shall not apply to":

> Any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). "[T]he purpose of the exception is to 'prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *United States v. Gaubert*, 499 U.S. 315, 323 (1991) (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984)). Congress enacted the FTCA to remedy and deter tortious conduct by federal personnel, but sought in the FTCA's discretionary-function exception to prevent such claims from impairing the government's legitimate exercises of policy discretion. *See Red Lake Band of Chippewa Indians v. United States*, 800 F.2d 1187, 1195-96 (D.C. Cir. 1986); *Gray v. Bell*, 712 F.2d 490, 506 (D.C. Cir. 1983). A factfinder's post-hoc determination in a lawsuit that governmental conduct fell short of standards of reasonable care, for example, should not be permitted to gainsay the contrary determination of officials vested with discretion to decide "how best to accommodate"

conflicting policy goals "and the reality of finite agency resources." *Berkovitz*, 486 U.S. at 537 (internal quotation marks omitted). Duly authorized government personnel, not judges or juries, decide what counts as reasonable public policy.

To determine whether governmental conduct falls within the discretionary-function exception, we look at the "nature of the conduct, rather than the status of the actor," *Gaubert*, 499 U.S. at 322 (quoting *Varig Airlines*, 467 U.S. at 813), and ask two questions:

*First*, we consider whether the challenged conduct "involves an element of judgment or choice." *Berkovitz*, 486 U.S. at 536. If an exercise of discretion is involved, then, consistent with the last clause of the exception, "the discretionary function exception immunizes even government abuses of discretion." *Shuler v. United States*, 531 F.3d 930, 935 (D.C. Cir. 2008); *see* 28 U.S.C. § 2680(a) (excluding from the reach of the FTCA government exercises of discretion "whether or not the discretion involved be abused"). But the element of discretion is necessarily absent where "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz*, 486 U.S. at 536. The exception thus does not apply to a claim that an agency failed to "perform its clear duty" or to "act in accord with a specific mandatory directive." *Id*. at 545.

*Second*, if the conduct does involve some element of judgment or choice, we must ask whether the "judgment is of the kind that the discretionary function exception was designed to shield," *Gaubert*, 499 U.S. at 322-23 (quoting *Berkovitz*, 486 U.S. at 536), that is, whether the actions or decisions "were within the range of choice accorded by

federal policy and law and were the results of policy determinations," *Berkovitz*, 486 U.S. at 538. Even a discretionary act within the scope of a federal official's employment is not within the exception if it "cannot be said to be based on the purposes that the regulatory regime seeks to accomplish." *Gaubert*, 499 U.S. at 325 n.7. The exception thus "insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment," *Berkovitz,* 486 U.S. at 537, but "[a]n employee of the government acting beyond his authority is not exercising the sort of discretion the discretionary function exception was enacted to protect," *Red Lake*, 800 F.2d at 1196.

This court has long held that the decision "whether to prosecute" is typically a "quintessentially discretionary" function that involves judgment and requires balancing policy goals and finite agency resources, thus meriting protection under the discretionary-function exception. *Moore v. Valder*, 65 F.3d 189, 197 (D.C. Cir. 1995); *see Gray*, 712 F.2d at 514. In determining whether the exception applies, we have treated the decision to initiate an administrative proceeding as we do a decision to pursue a criminal prosecution. *See Sloan v. U.S. Dep't of Hous. & Urban Dev.*, 236 F.3d 756, 760 (D.C. Cir. 2001). A decision by the OCC to bring an action pursuant to its broad statutory enforcement authority, 12 U.S.C. § 1818(b), (i), therefore ordinarily would appear to qualify for the discretionary-function exception, even if a factfinder considering a tort claim arising out of the enforcement decision might conclude that the prosecution was unreasonable or otherwise amounted to an abuse of the OCC's enforcement discretion.

But our inquiry into the viability of Loumiet's FTCA claims does not end there. This case raises the additional,

thorny question—novel in our circuit—whether the FTCA's discretionary-function exception shields the United States from common-law tort liability under the Act even when the otherwise discretionary conduct the plaintiff challenges exceeds constitutional limits on the government's authority to act. Loumiet alleges FTCA tort claims, including claims of intentional infliction of emotional distress and malicious prosecution, based on conduct generally subject to the agency's enforcement discretion. But he also alleges that the OCC's retaliatory enforcement action violated his First and Fifth Amendment rights and thus was not an exercise of the sort of discretion the exception shields. *See* Compl. ¶ 111, App. Tab 2 at 64 ("Because the defendants' behavior failed to comply with the internal rules and procedures of the OCC itself, and also grossly offended the First and Fifth Amendments to our Constitution, the 'discretionary activity' exclusion under the FTCA does not apply.").

The government responds that the challenged prosecution was, at bottom, discretionary, and that Loumiet's constitutional allegations do not affect the applicability of the discretionary-function exception to bar the FTCA claims. Because the FTCA does not waive sovereign immunity for constitutional torts, the government objects, there can be no unconstitutional-discretion limitation on the exception. In any event, it contends, Loumiet alleges no violation of any clearly established constitutional directive—the only type of constitutional violation that, in the government's view, might render the discretionary-function exception inapplicable.

We hold that the FTCA's discretionary-function exception does not provide a blanket immunity against tortious conduct that a plaintiff plausibly alleges also flouts a constitutional prescription. At least seven circuits, including the First, Second, Third, Fourth, Fifth, Eighth, and Ninth,

have either held or stated in dictum that the discretionary-function exception does not shield government officials from FTCA liability when they exceed the scope of their constitutional authority. In *Nurse v. United States*, for example, the Ninth Circuit held that "[i]n general, governmental conduct cannot be discretionary if it violates a legal mandate," including a constitutional mandate. 226 F.3d 996, 1002 (9th Cir. 2000). The discretionary-function exception was inapplicable, that court explained, because the plaintiff had alleged tort claims based on "discriminatory, unconstitutional policies which the[] [defendants] had no discretion to create." *Id.* Likewise, the Eighth Circuit in *Raz v. United States* held that the FBI's "alleged surveillance activities f[e]ll outside the FTCA's discretionary-function exception" where the plaintiff had "alleged they were conducted in violation of his First and Fourth Amendment rights." 343 F.3d 945, 948 (8th Cir. 2003); *see also, e.g.*, *Limone v. United States*, 579 F.3d 79, 102 (1st Cir. 2009) (holding that challenged "conduct was unconstitutional and, therefore, not within the sweep of the discretionary function exception"); *Medina v. United States*, 259 F.3d 220, 225 (4th Cir. 2001) (In "determin[ing] the bounds of the discretionary function exception . . . we begin with the principle that federal officials do not possess discretion to violate constitutional rights or federal statutes." (internal quotation marks, alterations, and citations omitted)); *U.S. Fid. & Guar. Co. v. United States*, 837 F.2d 116, 120 (3d Cir. 1988) ("[C]onduct cannot be discretionary if it violates the Constitution, a statute, or an applicable regulation. Federal officials do not possess discretion to violate constitutional rights or federal statutes."); *Sutton v. United States*, 819 F.2d 1289, 1293 (5th Cir. 1987) ("[A]ction does not fall within the discretionary function exception of § 2680(a) when governmental agents

exceed the scope of their authority as designated by statute or the Constitution.");[2] *Myers & Myers Inc. v. USPS*, 527 F.2d 1252, 1261 (2d Cir. 1975) ("It is, of course, a tautology that a federal official cannot have discretion to behave unconstitutionally or outside the scope of his delegated authority.").[3]

To this court's knowledge, only the Seventh Circuit has held otherwise. *Kiiskila v. United States*, 466 F.2d 626, 627-28 (7th Cir. 1972). That court applied the discretionary-function exception to immunize the government from FTCA liability arising from the decision of a military-base commander to exclude the plaintiff, a civilian manager at the base's credit union, from entering the base because she carried antiwar literature and planned an off-site antiwar

---

[2] A panel of the Fifth Circuit later relied on *Sutton* to hold the discretionary-function exception inapplicable to conduct a plaintiff had alleged to violate the Fourth and Fifth Amendments. *See Castro v. United States*, 560 F.3d 381, 389-90 (5th Cir. 2009) (subsequent history omitted). The en banc Fifth Circuit summarily vacated the *Castro* panel decision, but in so doing did not address the interplay between constitutional allegations and the discretionary-function exception. *See Castro v. United States*, 608 F.3d 266, 268-69 (5th Cir. 2010) (en banc). Instead, it adopted the prior district court opinion, *id.*, which also was silent on the import of the plaintiff's constitutional allegations, *see Castro v. United States*, No. CIV.A. C-06-61, 2007 WL 471095, at \*7-\*9 (S.D. Tex. Feb. 9, 2007) (subsequent history omitted). Notwithstanding *Sutton*, the Fifth Circuit has since observed that the circuit has "not yet determined whether a constitutional violation, as opposed to a statutory, regulatory, or policy violation, precludes the application of the discretionary function exception." *Spotts v. United States*, 613 F.3d 559, 569 (5th Cir. 2010) (citing *Castro*, 608 F.3d 266).

[3] The government's briefing not only failed to distinguish this great weight of authority, but did not even acknowledge it.

rally—an exclusion the court had already determined violated the First Amendment. *Id*.; *see Kiiskila v. Nichols*, 433 F.2d 745, 746-51 (7th Cir. 1970) (en banc). The bank manager sought damages under the FTCA, but the court of appeals sustained dismissal of that claim as deriving from an FTCA-excepted governmental "exercise of discretion, albeit constitutionally repugnant." *Kiiskila*, 466 F.2d at 627-28.

This circuit has yet to decide whether the FTCA's discretionary-function exception generally immunizes allegedly unconstitutional abuses of discretion by the government. In deciding that it does not, we follow the clear weight of circuit authority. By the same token that the government has no policymaking discretion to violate "a federal statute, regulation, or policy specifically prescrib[ing] a course of action for [its] employee to follow," *Berkovitz*, 486 U.S. at 536, the government lacks discretion to make unconstitutional policy choices. Although the discretionary-function exception shields government policymakers' lawful discretion to set social, economic, and political policy priorities from judicial second-guessing via tort law, there is no blanket exception for discretion that exceeds constitutional bounds.

As we have previously held, the policy discretion of federal personnel acting in their official capacity is necessarily "circumscribed by the rules that limit the bounds of [their] authority." *Red Lake*, 800 F.2d at 1197. Thus, in *Red Lake*, we concluded that an FBI agent who, due to FBI policy, lacked authority over non-FBI officials at a hostage situation was unprotected by the discretionary-function exception from a suit challenging orders he gave to officials not under his lawful command. *Id.* at 1196-97. The exception did not apply, we explained, because "[a] government official has no discretion to violate the binding

laws, regulations, or policies that define the extent of his official powers. An employee of the government acting beyond his authority is not exercising the sort of discretion the discretionary function exception was enacted to protect." *Id.* at 1196.

The discretionary-function exception likewise does not shield decisions that exceed constitutional bounds, even if such decisions are imbued with policy considerations. *See Medina*, 259 F.3d at 225 (acknowledging, in reliance on *Berkovitz*, 486 U.S. at 536, and *Red Lake*, 800 F.2d at 1196, that federal officials lack discretion to violate constitutional rights). A constitutional limit on governmental power, no less than a federal statutory or regulatory one like the FBI policy in *Red Lake*, circumscribes the government's authority even on decisions that otherwise would fall within its lawful discretion. The government "has no 'discretion' to violate the Federal Constitution; its dictates are absolute and imperative." *Owen v. City of Independence, Mo.*, 445 U.S. 622, 649 (1980). Indeed, the absence of a limitation on the discretionary-function exception for constitutionally ultra vires conduct would yield an illogical result: the FTCA would authorize tort claims against the government for conduct that violates the mandates of a statute, rule, or policy, while insulating the government from claims alleging on-duty conduct so egregious that it violates the more fundamental requirements of the Constitution.

Neither *Moore*, 65 F.3d 189, nor *Gray*, 712 F.2d 490, on which the government relies, addressed whether the discretionary-function exception immunizes even unconstitutional decisions to prosecute. In those cases, as here, we considered FTCA common-law tort claims against the government premised on conduct also alleged to be unconstitutional. *Moore*, 65 F.3d at 191; *Gray*, 712 F.2d at

495. The parties in *Moore* disputed the scope of the discretionary-function exception as applied to various alleged misdeeds relating to investigation and prosecution. We drew the line between conduct tied to the "quintessentially discretionary" decision to prosecute, which we held was immunized, and "discrete" and "separable" activity such as "disclosing grand jury testimony to unauthorized third parties," which we held was not. *Id.* at 196-97. The plaintiff in *Moore* did not argue, nor did we consider, whether constitutional limits on a prosecutor's discretion affected the discretionary-function exception's applicability. *See id.*; *see also* Br. of Plaintiff-Appellant, *Moore v. United States*, Nos. 99-5197 & 99-5198, 1999 WL 34834283 (D.C. Cir. Dec. 17, 1999). Similarly in *Gray*, the focus of dispute was whether the prosecutors' pre-indictment investigatory actions were distinct from their clearly discretionary—and thus, all assumed, immunized—decision to prosecute. 712 F.2d at 515-16. In holding that they were not, we nowhere discussed any effect the alleged unconstitutionality of the prosecutors' actions might have on the availability of the discretionary-function exception. *Id.*

The government also contends that recognition of constitutional limitations on the FTCA's discretionary-function exception would run counter to the Supreme Court's statement in *FDIC v. Meyer*, 510 U.S. 471, 478 (1994), that "the United States simply has not rendered itself liable under [the FTCA] for constitutional tort claims," which are actionable only against individual officials under *Bivens*, Br. of the United States 18-19. Judge Smith voiced a similar concern in his dissent from the Fifth Circuit panel decision in *Castro* when he worried that, "by a plaintiff's artful pleading, the United States c[ould] be liable whenever the Constitution is violated even though, under *Meyer*, the sovereign is not subject to liability for constitutional torts." *Castro v. United*

*States*, 560 F.3d 381, 394 (5th Cir. 2009) (Smith, J., dissenting), *rev'd on reh'g en banc*, 608 F.3d 266 (5th Cir. 2010).

But those contentions miscast the relationship between FTCA state-law torts and *Bivens* constitutional claims. The state-law substance of an FTCA claim is unchanged by courts' recognition of constitutional bounds to the legitimate discretion that the FTCA immunizes. Federal constitutional claims for damages are cognizable only under *Bivens*, which runs against individual governmental officials personally. *See Meyer*, 510 U.S. at 482, 485-86. The FTCA, in contrast, provides a method to enforce state tort law against the federal government itself. *See* 28 U.S.C. § 1346(b)(1); *cf. Carlson v. Green*, 446 U.S. 14, 20-21 (1980) (describing distinct goals and characteristics of FTCA and *Bivens* claims and concluding that "Congress views FTCA and *Bivens* as parallel, complementary causes of action"). A plaintiff who identifies constitutional defects in the conduct underlying her FTCA tort claim—whether or not she advances a *Bivens* claim against the individual official involved—may affect the availability of the discretionary-function defense, but she does not thereby convert an FTCA claim into a constitutional damages claim against the government; state law is necessarily still the source of the substantive standard of FTCA liability. The First Circuit has similarly emphasized, in holding unconstitutional conduct to fall outside of "the sweep of the discretionary function exception," that it does not view the government's "constitutional transgressions as corresponding to the plaintiffs' causes of action—after all, the plaintiffs' claims are not *Bivens* claims—but rather, as negating the discretionary function defense." *Limone*, 579 F.3d at 102 & n.12.

The question remains whether or to what degree a constitutional mandate must be specific or clearly established to render the discretionary-function exception inapplicable. Contending that the exception should at least immunize governmental policy discretion that is not clearly unconstitutional, the government adverts to the qualified-immunity doctrine of *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), under which a constitutional tort plaintiff seeking to defeat an individual official's qualified-immunity defense must show that the claimed constitutional rights were "clearly established," Br. of the United States 19. The government appreciates that qualified immunity as such applies only to governmental officials sued in their individual capacities, not to the government as an entity. *Harlow*, 457 U.S. at 818. Qualified immunity—a form of official immunity—is directly tied to "the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties," to the detriment of the public interest. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *see also Harlow*, 457 U.S. at 816, 819.

We take the government to be arguing by analogy that principles similar to those that undergird qualified immunity should extend to preserve discretionary-function immunity for some unconstitutional acts. We have found no precedent in any circuit holding as the government urges, nor does it cite any. At this juncture we see no cause to make this the first. Indeed, the district court on remand might allow Loumiet's FTCA claims to proceed under a narrow standard such as the government suggests.[4] That would leave for another day the

---

[4] *Cf. Moore v. Hartman*, 704 F.3d 1003, 1004 (D.C. Cir. 2013) (noting that "the precedent in this Circuit clearly established in 1988 . . . the contours of the First Amendment right to be free from retaliatory prosecution"); *Moore v. Valder*, 65 F.3d at 196 (holding

question whether the FTCA immunizes exercises of policy discretion in violation of constitutional constraints that are not already clear.

To resolve this appeal, we need go no further than to hold that the district court erred as a matter of law in barring Loumiet's FTCA claims on the ground that, as a general matter, "even constitutionally defective" exercises of discretion fall within the Act's discretionary-function exception. *Loumiet II*, 65 F. Supp. 3d at 25. That broad-brush approach is foreclosed by our holding today. The district court should determine in the first instance whether Loumiet's complaint plausibly alleges that the OCC's conduct exceeded the scope of its constitutional authority so as to vitiate discretionary-function immunity.

## III

Loumiet also asserts that the district court erred in dismissing his First and Fifth Amendment *Bivens* claims as time-barred.[5] Those claims did not accrue, he contends, until the OCC finally dismissed its enforcement action on July 27, 2009, because the agency's ongoing prosecution of that action inflicted continuing harm until its final dismissal. The defendants counter that Loumiet failed to raise that continuing-violations argument before the district court and

---

that a "retaliatory prosecution claim . . . does allege the violation of clearly established law").

[5] Loumiet's Fifth Amendment due-process and First Amendment speech-based retaliation claims are premised on identical allegations, and Loumiet does not argue that they should have different dates of accrual. Accordingly, like the district court, we do not differentiate between those claims in assessing their timeliness. *See Loumiet I*, 968 F. Supp. 2d at 150 n.2.

that the doctrine in any event does not assist him. For the following reasons, we conclude that Loumiet adequately advanced the continuing-violations doctrine before the district court, and that his *Bivens* claims, staked on continuing, harmful conduct, were timely.

"When a federal action contains no statute of limitations, courts will ordinarily look to analogous provisions in state law as a source of a federal limitations period." *Doe v. Dep't of Justice*, 753 F.2d 1092, 1114 (D.C. Cir. 1985); *see id.* at 1114-15 (applying state limitations period in *Bivens* action). In this case, there is no dispute that the District of Columbia's general three-year statute of limitations applies to Loumiet's *Bivens* claims. *See* D.C. Code § 12-301(8). Therefore, if Loumiet's claims accrued before July 9, 2009—more than three years before he filed his July 9, 2012, complaint—they would be barred by the statute of limitations.

State law dictates the statute of limitations, but the timing of the accrual of Loumiet's claims is a question of federal law. *Cf. Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law."). Ordinarily, "accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Id.* (internal quotation marks, alterations, and citations omitted). In other words, "[a] claim normally accrues when the factual and legal prerequisites for filing suit are in place." *Earle v. District of Columbia*, 707 F.3d 299, 306 (D.C. Cir. 2012) (quoting *Norwest Bank Minn. Nat'l Ass'n v. FDIC*, 312 F.3d 447, 451 (D.C. Cir. 2002)).

The defendants contend, and the district court agreed, *Loumiet I*, 968 F. Supp. 2d at 149-53, that under that general accrual rule, Loumiet's First and Fifth Amendment retaliatory

prosecution claims are time-barred because all of the events underpinning each of the elements of those claims took place well before the statute-of-limitations cutoff of July 9, 2009. We need not decide whether Loumiet's claims would have been untimely under the general accrual rule, however, because we agree with Loumiet's contention that the continuing-violations doctrine displaced it here to render his claims timely filed.

As an initial matter, Loumiet adequately raised, and thus preserved for our review, his continuing-violations argument. The district court relied on that argument in holding that the FTCA claims were timely, but treated it as forfeited for the *Bivens* claims. *See Loumiet I*, 968 F. Supp. 2d at 152 n.3, 155; *Loumiet II*, 65 F. Supp. 3d at 24-25. In addressing the timeliness of his claims before the district court, however, Loumiet expressly analogized his *Bivens* retaliatory prosecution claims to his FTCA tort claims, characterizing the former as "simply an offspring of the OCC's malicious prosecution." Pl. Opp. to Mot. to Dismiss, App. Tab 3 at 35. Loumiet thus adequately incorporated by reference his invocation of the continuing-violations theory as to his FTCA claims. *Compare id.* at 35-36, *with id.* at 49-51. We therefore consider the argument.

Even while this court "do[es] not lightly create exceptions to the general rule of claim accrual," *Earle*, 707 F.3d at 306 n.9, it has "recognized various exceptions to, and glosses on, the rule" including the "muddled, . . . intricate[,] and somewhat confusing" continuing-violations, or continuing-tort, doctrine, *id.* at 309 (internal quotation marks omitted). The continuing-violations doctrine applies where "no single incident in a continuous chain of tortious activity can 'fairly or realistically be identified as the cause of significant harm,'" and so it is "proper to regard the

cumulative effect of the conduct as actionable." *Page v. United States*, 729 F.2d 818, 821-22 (D.C. Cir. 1984) (quoting *Fowkes v. Penn. R.R. Co.*, 264 F.2d 397, 399 (3d Cir. 1959)). The court has recognized two types of continuing violations, only the second of which is implicated here: (1) where defendants violated a statutorily imposed continuing obligation, *Earle*, 707 F.3d at 307; or (2) where the "character [of the challenged conduct] as a violation did not become clear until it was repeated during the limitations period, typically because it is only its cumulative impact (as in the case of a hostile work environment) that reveals its illegality," *id.* at 306 (quoting *Taylor v. FDIC*, 132 F.3d 753, 765 (D.C. Cir. 1997)).

In *Page*, we recognized the latter type of continuing violation in the context of an FTCA claim alleging a "gradual" injury "resulting from the cumulative impact of years of allegedly tortious drug treatment." 729 F.2d at 822. It "seem[ed] unrealistic," we explained, "to regard each prescription of drugs as the cause of a separate injury, or as a separate tortious act triggering a new limitation period." *Id.* at 822-23. Accordingly, we held that the plaintiff's claim did not accrue until the conclusion of what was alleged to have been nearly twenty years of tortious drug treatment. *Id.* at 819, 822-23.

Under our decision in *Whelan*, that reasoning holds true where a plaintiff has alleged that the full course of legal proceedings effected a single, cumulative harm. We held there that a claim of tortious interference with business opportunities could proceed even if the business opportunities did not exist at the time of the allegedly interfering lawsuit, because under the continuing-violations doctrine, "a lawsuit is a continuous, not an isolated event," the effects of which "persist from the initial filing to the final disposition of the

case." 953 F.2d at 673. Put another way, a lawsuit "is repetitive in that it represents the assertion, every day, of the plaintiff's claim," and "[a] defendant subject to a lawsuit is likely to suffer damage not so much from the initial complaint but from the cumulative costs of defense and the reputational harm caused by an unresolved claim." *Id.* A lawsuit is thus different from the typical case of a "mere failure to right a wrong and make the plaintiff whole." *Id.* (quoting *Fitzgerald v. Seamans*, 553 F.2d 220, 230 (D.C. Cir. 1977)).

*Page* and *Whelan* are dispositive here. Loumiet alleges continuing harm resulting not only from the filing of the OCC's frivolous, retaliatory legal proceedings against him, but also from the agency's continued prosecution of Loumiet and associated publicity over a period of many years. It is not only the initiation of the OCC's action that Loumiet identified as harmful; he also cited, among other things, the experts the OCC sought to put on the stand, Compl. ¶¶ 93-94, App. Tab 2 at 52-54, statements made to the press, *id.* ¶¶ 15-16, 85, 91, App. Tab 2 at 4-5, 48-49, 51-52, the three-week trial in which Loumiet had to defend himself against baseless allegations, *id.* ¶¶ 94-105, App. Tab 2 at 59-60, the testimony levelled against him, *id.* ¶¶ 94-95, 98-105, App. Tab 2 at 53-54, 56-60, and the four years of decreased income, downgraded partnership stake, and continuing emotional distress he alleges he suffered throughout the pendency of the OCC enforcement action, *id.* ¶ 106, App. Tab 2 at 60-61. As with the ongoing tort in *Whelan*, the commencement of the OCC action at issue here was but "the first link in a chain of conduct that d[id] not end until the [OCC] cease[d] prosecution of the suit." 953 F.2d at 674 (citing *Page*, 729 F.2d at 821-22).

The defendants contend that neither *Page* nor *Whelan* applies because neither case involved a *Bivens* claim. Limitations doctrines are typically trans-substantive, however,

and this one is no exception. *Whelan* places squarely within the scope of the continuing-violations doctrine ongoing legal proceedings that cause continuing harm. 953 F.2d at 673-74. The defendants offer no reason why that rule should differ in the *Bivens* context. *Cf. Va. Hosp. Ass'n v. Baliles*, 868 F.2d 653, 663 (4th Cir. 1989), *aff'd sub nom. Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498 (1990) (applying continuing-violations doctrine to delay accrual in § 1983 case). Loumiet filed his *Bivens* claims on July 9, 2012, within three years of the OCC's July 27, 2009, dismissal of its enforcement action against him. Those claims were therefore timely. Accordingly, we remand to the district court for its consideration of the remaining defenses raised but not yet decided in the district court. *See Loumiet I*, 968 F. Supp. 2d at 149.[6]

\* \* \*

For the foregoing reasons, we reverse the dismissal order of the district court and remand for further proceedings consistent with this opinion.

*So ordered.*

---

[6] Because we reverse the dismissal of Loumiet's *Bivens* claims, we need not reach the question whether the district court abused its discretion in denying Loumiet's motion for reconsideration as to those claims.