Thus, the Court will dismiss Counts One and Four[3] as untimely.
B.
Mr. Bundy brings three claims under 42 U.S.C. § 1983 : an excessive force claim, a retaliation claim, and a malicious prosecution claim. See generally Compl. at 16-20. The Senior Officials argue that these counts should be dismissed because *127 Section 1983 is inapplicable to federal officers. Defs.' Mem. at 7.
" Section 1983 does not apply to federal officials acting under color of federal law." Settles v. U.S. Parole Comm'n , 429 F.3d 1098, 1104 (D.C. Cir. 2005). But the issue here is federal versus state law, not federal versus state actor. "The traditional definition of acting under color of state law requires that the defendant in a Section 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " West v. Atkins , 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).
There is no claim that the Senior Officials possessed authority through the laws of Nevada or that they were somehow "clothed with the authority of" Nevada law despite their employment by the United States. Rather, the Complaint alleges only that these Senior Officials were acting under the color of federal law. At all times, they were "clothed with the authority" of federal, not state, law. West , 487 U.S. at 49, 108 S.Ct. 2250.
Mr. Bundy accuses the Senior Officials of directing state officers to arrest him and federal prosecutors to prosecute him for improper reasons. See generally Compl. at 18-20. But these allegations are based only on a federal prosecution. Mr. Bundy does not explain how the Senior Officials could act under the color of state law in bringing a federal prosecution. In fact, the D.C. Circuit has made clear that Section 1983 "does not apply to officials acting under color of federal law, such as a federal prosecutor acting within the scope of her duties. " Jones v. Horne , 634 F.3d 588, 594 n.2 (D.C. Cir. 2011) (emphasis added).
In response, Mr. Bundy claims that he is suing the Senior Officials as co-conspirators with state officers under Section 1983. Pl.'s Mem. at 4-5. He argues that because the Complaint avers that the Senior Officials "acting in concert, directed and ordered local Nevada state officials," he has alleged that the Senior Officials themselves were "acting under the color of state law." Id. at 4. But he has it exactly backwards. In his telling, the Senior Officials used their federal authority to order state officers to execute their plans. So perhaps one could argue that the state officers acted under the color of federal law during the standoff. But nowhere does he allege that the Senior Officials had or used any authority granted by Nevada law. Nor would it be plausible to so allege.
A Section 1983 action requires that a defendant exercise power "made possible only because the wrongdoer is clothed with the authority of state law." West , 487 U.S. at 49, 108 S.Ct. 2250. That is not the allegation here. So the Court will dismiss Counts Five and Six, and this reasoning is an alternative ground for dismissing Count Four as well.
C.
The Senior Officials urge the Court to dismiss all claims against Attorneys General Sessions, Lynch, and Holder based on absolute prosecutorial immunity. Defs.' Mem. at 9-11. In response, Mr. Bundy argues that absolute immunity should not apply because the Complaint alleges that the Attorneys General prosecuted him without probable cause and knowingly relied on false allegations. Pl.'s Mem. at 7.[4] Mr. Bundy does not argue that *128 he is challenging administrative or investigative conduct by the Attorneys General. Cf. Burns v. Reed , 500 U.S. 478, 494, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) (explaining that absolute immunity does not extend to "every litigation-inducing conduct"). He challenges only the decision to prosecute.
Federal prosecutors enjoy absolute immunity for "initiating a prosecution" and "presenting the [government's] case." Imbler v. Pachtman , 424 U.S. 409, 431, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). This immunity extends to activities "intimately associated with the judicial phase of the criminal process." Id. at 430-31, 96 S.Ct. 984 ; see also Buckley v. Fitzsimmons , 509 U.S. 259, 270-71, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) (discussing the line that divides activities of a prosecutor that are entitled to absolute immunity from those entitled to qualified immunity).
The Complaint alleges that "[t]he prosecution against [Mr. Bundy] for allegations known to be false were malicious, shocking, and objectively unreasonable in light of the circumstances." Compl. at 20. According to Mr. Bundy, the Attorneys General prosecuted him "in retaliation for his lawful and constitutional exercise of his First Amendment and other rights." Pl.'s Mem. at 8.
Prosecutorial immunity insulates the Attorneys General from liability for the "unquestionably advocatory decision" to prosecute Mr. Bundy. Moore v. Valder , 65 F.3d 189, 194 (D.C. Cir. 1995). In Imbler , the plaintiff alleged that the prosecutor knowingly used false testimony and suppressed material exculpatory evidence at trial. 424 U.S. at 413, 96 S.Ct. 984. Even so, the Supreme Court upheld the lower courts' rulings that the prosecutor was immune from potential liability for the alleged misconduct. Id. at 427, 96 S.Ct. 984. Even taking all of Mr. Bundy's allegations of misconduct as true, absolute immunity bars his claims against the Attorneys General.
For this reason, the Court will dismiss Counts Two and Three against Attorneys General Sessions, Lynch, and Holder. And this reasoning is an alternative ground for dismissing Counts Five and Six against these defendants as well.[5]
D.
The Senior Officials also insist that all claims against Directors Comey and Kornze should be dismissed because the Complaint does not sufficiently allege their personal participation. Defs.' Mem. at 12. The Supreme Court's seminal decision Ashcroft v. Iqbal decides this question.
In Iqbal , a Pakistani Muslim sued high-level federal officials, including the former Attorney General and Director of the FBI, alleging that he had been deprived of various constitutional rights while in post-9/11 pre-trial detention.
*129 556 U.S. at 666, 129 S.Ct. 1937. The Court dismissed the complaint, holding that "[b]ecause vicarious liability is inapplicable to Bivens and Section 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id. at 676, 129 S.Ct. 1937. The Court emphasized that "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Id. at 677, 129 S.Ct. 1937. So too here.
Mr. Bundy's Complaint does not allege that Directors Comey and Kornze participated in the decision to bring a criminal indictment against Mr. Bundy. In fact, the Complaint alleges that General Lynch "personally caused and instituted the indictment." Compl. at 11. And in his briefing, Mr. Bundy offers no argument that Directors Comey and Kornze were personally involved in the decision to prosecute Mr. Bundy. See generally Pl.'s Mem. at 8-9.
Mr. Bundy also fails to allege that they personally participated in the unlawful conduct during the standoff. Mr. Bundy's Complaint has no factual allegations about the Directors' involvement in the actions leading to this lawsuit, such as the use of force or the seizure of his cattle. In his response to the Senior Officials' Motion to Dismiss, Mr. Bundy points only to three paragraphs in the Complaint:
15. Under the guise of collecting grazing fees, an alleged and unverified debt, the federal government - BLM and FBI - upon orders from Defendants Comey, Kornze and Holder from Washington D.C. in this district, invaded the Bundy Ranch in April of 2014 and violently assaulted and extorted [Mr. Bundy] and his family members and killed his family's cattle.
25. Defendant Kornze directly and personally used his agency, from Washington D.C. in this district, to violate the constitutional and other rights of [Mr. Bundy].
27. Defendant Comey directly, willfully, and personally used his agency, from Washington D.C. in this district, to violate the constitutional and other rights of [Mr. Bundy].
Conclusory allegations such as these are insufficient to state a claim against the Directors. See Iqbal , 556 U.S. at 686, 129 S.Ct. 1937 ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context."). For instance, the Iqbal Court rejected a pleading that a high-level official " 'knew of, condoned, and willfully and maliciously agreed to subject him' to harsh conditions of confinement 'as a matter of policy, solely on account of his religion, race, and/or national origin and for no legitimate penological interest' " as too conclusory. Iqbal , 556 U.S. at 680, 129 S.Ct. 1937.
Although the Directors allegedly "directed" other officers, who are not before this Court, no factual assertions support this allegation, and conclusory allegations are insufficient on their own to defeat a motion to dismiss. See Chavez v. United States , 683 F.3d 1102, 1110 (9th Cir. 2012) (discounting the "wholly conclusory allegation that the supervisory defendants 'personally reviewed and, thus, knowingly ordered, directed, sanctioned or permitted' " traffic stops that allegedly violated the Fourth Amendment); cf. Morris v. U.S. Sentencing Comm'n , 62 F. Supp. 3d 67, 75 (D.D.C. 2014), aff'd , 696 F. App'x 515 (D.C. Cir. 2017) ("Consequently, high-level officials ... typically are not subject to Bivens liability since they do not routinely participate personally in decisions about a particular individual at a particular location.").
As to Paragraphs 25 and 27, the Complaint offers no factual support to support *130 the bald assertion that Directors Kornze and Comey "used their agenc[ies]" to violate Mr. Bundy's constitutional rights. Just as it was not enough for the Iqbal plaintiff to allege that officials "agreed to subject" him to unconstitutional confinement, see 556 U.S. at 680, 129 S.Ct. 1937, it is not enough here for Mr. Bundy to allege that an official "used his agency ... to violate" his constitutional rights. Compl. at 6. These are "naked assertion[s]" devoid of "further factual enhancement." Iqbal , 556 U.S. at 678, 129 S.Ct. 1937 (explaining that Rule 8 "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" (cleaned up)).
In sum, Mr. Bundy's conclusory allegations that Directors Comey and Kornze engaged in some sort of conspiracy, "directing" other officers to violate Mr. Bundy's constitutional rights are unsupported by the facts alleged in the Complaint. See, e.g., Gorbey v. United States , 309 F. App'x 425 (D.C. Cir. 2009) (per curiam) (affirming dismissal of complaint containing "only conclusory and unsubstantiated allegations" of unlawful conduct). Indeed, the Senior Officials are correct that if such allegations sufficed, high-ranking federal officials would find themselves in litigation every day around the country.
Because the Complaint fails to plausibly allege that Directors Comey or Kornze personally participated in the alleged misconduct, the Court will dismiss Counts Two and Three against them. This reasoning serves as alternative grounds for also dismissing Counts One, Four, Five, and Six against them.
IV.
For the all these reasons, the Defendants' Motion to Dismiss will be granted, and the Plaintiff's Complaint will be dismissed. A separate order will issue.

In any event, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face. ' " Iqbal , 556 U.S. at 678, 129 S.Ct. 1937. Count Four falls short of this test. It is implausible to suggest that Directors Comey and Kornze-whom the Complaint alleges were in this District at the time-were involved in the minute-by-minute decisions made by agents in Nevada when confronted by armed Bundy supporters. Accord Argueta v. ICE , 643 F.3d 60, 75-77 (3d Cir. 2011) (rejecting a claim that high-ranking federal officials directly participated in allegedly unlawful raids); Farmer v. Moritsugu , 163 F.3d 610, 616 (D.C. Cir. 1998) (rejecting an argument that would expose the Medical Director of Bureau of Prisons to liability "for all alleged mistakes in the individual diagnoses of every inmate in the BOP system, simply by virtue of an inmate's complaint").
Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal , 556 U.S. at 679, 129 S.Ct. 1937. Perhaps it is plausible that the agents who made the decisions and took the actions that Mr. Bundy complains of did so at the direction of their immediate superiors. But it is implausible that the Directors-who supervised large federal agencies and who were hundreds of miles away at the time of the events-were somehow personally involved in real-time decisions of individual officers, such as particular uses of force. The Complaint's repeated allegations that the Directors were in this District at the time may have staved off a motion to transfer, but they invited an implausibility claim as to these Counts.

The Senior Officials argue that absolute prosecutorial immunity can be asserted in cases brought under Bivens , Section 1983, and RFRA. See Defs.' Mem. at 11. Mr. Bundy does not challenge this assertion. See generally Pl.'s Mem. at 6-8.

The Complaint alleges that Attorney General Sessions "condoned" the decision to prosecute by appealing the dismissal of the criminal case. Compl. ¶ 11. But as discussed above, General Sessions enjoys absolute prosecutorial immunity for such an "unquestionably advocatory" decision. See Moore , 65 F.3d at 194.
As for the rest of the allegations, the Court finds that Mr. Bundy's claims against Attorneys General Sessions and Holder are implausible because they were even not in office when federal authorities indicted Mr. Bundy. Common sense requires the Court to reject allegations that these officials, who did not work for the Department of Justice at the time, were somehow personally involved in the decision to bring federal charges, in retaliation or otherwise. Cf. Iqbal , 556 U.S. at 679, 129 S.Ct. 1937 (determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").