# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **JEFFREY M. WILLETT**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18-cv-1707 (TSC) |
| | ) | |
| **MARCO RUBIO**, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

In this long-running litigation, *pro se* Plaintiff Jeffrey M. Willett alleges that federal officials unlawfully investigated him for identity fraud, revoked and destroyed his passport, and denied him a hearing to contest that revocation. Although any confusion regarding Plaintiff's identity has since been cleared up and Plaintiff has been issued a new passport, he brings various claims for declaratory and injunctive relief, as well as damages claims under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). But Plaintiff lacks standing to seek declaratory and injunctive relief because he alleges only past harms and no substantial risk of future injury. His *Bivens* claims, moreover, are barred by the statute of limitations and arise in a new context to which no *Bivens* remedy extends. For these and other reasons, the court will GRANT Defendants' Motions to Dismiss, ECF Nos. 28, 70, and DENY Plaintiff's Motion for Leave to File a Third Amended Complaint, ECF No. 112. The court will also DENY Plaintiff's Motion for Recusal, ECF No. 114, and his Motion to Compel, ECF No. 126.

## I. BACKGROUND

### A. Factual Background

For purposes of resolving the Motions to Dismiss, the court evaluates the operative complaint, ECF No. 46, assumes the truth of all well-pleaded factual allegations, and draws all reasonable inferences in Plaintiff's favor. *See Nat'l Ass'n of Postal Supervisors v. U.S. Postal Serv.*, 26 F.4th 960, 970 (D.C. Cir. 2022). The court also considers the documents attached to or incorporated in the Complaint. *See N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020).

In 2005, Plaintiff applied to a Nevada state court to change his name from "Michael James Kocik" to "Jeffrey Michael Willett," and the court granted his request. Am. Compl. ¶¶ 25–27, ECF No. 46. The following year, Plaintiff applied for, and received, a new passport under his changed name—the 2006 passport. *Id.* ¶¶ 29–30. Some three years later, in 2009, "Plaintiff met a Romanian student," Roxanne Ciopei, who had briefly lived in the United States. Ciopei had trouble cashing checks from the Internal Revenue Service because her name had been misspelled on her Social Security card. *Id.* ¶¶ 31–33. Plaintiff intervened on Ciopei's behalf and attempted to persuade the Social Security Administration ("SSA") to issue her a corrected card. *Id.* ¶ 35. SSA officials initially promised to do so but did not follow through. *Id.* ¶¶ 35–36. After Plaintiff's complaints were "rebuffed" by SSA officials, Plaintiff "escalated his concerns" to the SSA's Office of the Inspector General ("OIG"), *id.* ¶¶ 37–38, and accused the agency of "fraud and waste." *See* Ex. B., ECF No. 1-4.

Plaintiff alleges that Inspector General Patrick O'Carroll "not only refused to open an investigation" but instead sent three federal agents to Plaintiff's home to "threaten[] Plaintiff with arrest unless he agreed to drop his complaint." Am. Compl. ¶ 38. After Plaintiff further

escalated his concerns to a Congressman from Virginia, the Inspector General sent the Congressman a letter, stating that OIG did not "block[]" an investigation but instead "declined" to conduct one "as there was no fraud or waste" in denying Ciopei a replacement card. *See* Ex. B at 1–2. The letter explained that the SSA could not issue a replacement card "while [Ciopei] remain[ed] outside of the United States and unauthorized to work." *Id.* at 1. The letter further stated that because Plaintiff had barraged the SSA with a campaign of harassing phone calls and emails, the SSA "sent several Special Agents . . . to his home to interview him to ensure that he did not pose a threat to SSA or OIG employees." *Id.* at 2.

In February 2011, SSA special agents contacted the State Department's Bureau of Diplomatic Security to initiate "a joint criminal investigation in which Plaintiff was wrongfully accused of passport fraud." Am. Compl. ¶ 40; *see also* Ex. C, ECF No. 1-5. Agents had received "a notarized" letter from a Nevada court stating that "there is no record of Kocik's name change to Willett." Ex. C at 3; *see also* Am. Compl. ¶ 134; Ex. M, ECF No. 1-15 ("The records of the CLERK OF THE COURT have been searched for the period of January 1, 2005 through February 15, 2011 the following actions: NAME CHANGE under the name(s) MICHAEL JAMES KOCIK changed to JEFFREY WILLETT. We are unable to locate a record of a NAME CHANGE action in Clark County, between the dates noted above, under the above-mentioned names."). During the passport fraud investigation, agents "convened a Grand Jury to issue broad subpoenas" to compel testimony from Plaintiff's friends and family and obtain access to his financial records. Am. Compl. ¶¶ 44–45. Ultimately, federal prosecutors in both Virginia and New Hampshire declined to prosecute Plaintiff because the statute of limitations had expired, and the investigation into Plaintiff "was formally closed without prosecution" in March 2013.

*Id.* ¶¶ 47–48, 53; *see also* Ex. C at 4. Plaintiff was "never . . . prosecuted for any crime." Am. Compl. ¶ 197.

In November 2012, however, an SSA agent had sent a memo to the State Department's Bureau of Consular Affairs asserting that "irrespective of any criminal prosecution," Plaintiff's 2006 passport "needed to be revoked because Plaintiff had provided a forged . . . change of name court order when he applied" for that passport. Am. Compl. ¶ 50. In December 2012, Christine McLean, then-Acting Director of Legal Affairs for the State Department's Law Enforcement Liaison Division, revoked Plaintiff's passport. *Id.* ¶¶ 52, 58–59; *see also* Ex. E at 1, ECF No. 1-7. Plaintiff was not informed of the revocation and remained in possession of the 2006 passport until August 2014. Am. Compl. ¶ 60. Through a later FOIA request, Plaintiff learned that his 2005 name change record was missing from his State Department passport file. *Id.* ¶¶ 42, 200. Plaintiff alleges that SSA agents removed his name change record from his State Department file and urged McLean to revoke his passport in order to retaliate against him for complaining about the SSA's treatment of Roxanne Ciopei. *Id.* ¶¶ 197–98.

On August 12, 2014, Plaintiff dropped his passport off at the U.S. Consulate General in Amsterdam and paid $82 to have extra visa pages added to it. Am. Compl. ¶ 54; *see also* Ex. D, ECF No. 1-6. When Plaintiff went to retrieve the passport, he was told that it "was not ready" and "he would have to return another day." Am. Compl. ¶ 55. When Plaintiff returned on August 20, 2014, he was handed a letter from Acting Director McLean, dated December 2012, informing him that the passport had been revoked because it "was obtained illegally, fraudulently, or erroneously." *Id.* ¶¶ 58–60. The letter gave two grounds for this conclusion. First, that the Nevada court "has no record of your name change or of the court document you provided in support of your passport application." Ex. E at 1. Second, that "further government

records indicate that you continue to identify yourself to government authorities as Michael James Kocik, and not as Jeffrey Michael Willett." *Id.*

Plaintiff immediately retained an attorney, Bart Stapert, to challenge the revocation of his passport. Am. Compl. ¶ 61. Stapert contacted the Nevada lawyer who had represented Plaintiff in the name change matter and obtained from him a copy of the 2005 name change order. *Id.* And on September 3, 2014, Stapert arranged for a paralegal to go to the courthouse in Nevada to obtain a certified copy. *Id.*; *see also* Aff. of Theresa J. Muzgay, ECF No. 1-10. The court clerk initially "could not find the case," but soon discovered that it had been filed incorrectly under a misspelling of Plaintiff's previous name; the court clerk fixed the error and issued the paralegal a certified copy of the original order. Muzgay Aff.; *see also* Am. Compl. ¶ 63.

On September 12, 2014, Stapert requested a hearing on the revocation of Plaintiff's passport with the U.S. Consul General in Amsterdam and asked that Plaintiff be issued a temporary travel document in the meanwhile. Am. Compl. ¶ 69. On September 18, Vice Consul Grant Phillipp informed Stapert's office that Plaintiff was not eligible for a temporary travel document but invited Plaintiff to apply for a new passport. *Id.* ¶¶ 70, 72. Plaintiff applied and paid the fees for a new passport on September 23, and a new passport was issued on September 29. *Id.* ¶¶ 76–77.

Despite receiving a new passport, Plaintiff demanded the return of the 2006 passport because it contained stamps and visas "necessary to cross borders." Am. Compl. ¶ 83. Phillipp informed him that the 2006 passport had been sent for destruction and could not be retrieved. *Id.* ¶¶ 83, 86. Plaintiff also continued to pursue the revocation hearing he first requested on September 12, 2014. Under State Department regulation, such a hearing should have occurred within 60 days—*i.e.*, by November 11, 2014. *See* 22 C.F.R. § 51.70(c) (2014); *see also* Am.

Compl. ¶¶ 121–22. On November 12—after the deadline had lapsed—John Wilcock, Acting Consul General in Amsterdam, first attempted to schedule a hearing. Am. Compl. ¶ 126. In early December, Plaintiff and Stapert informed Wilcock that Plaintiff would not attend any hearing until the State Department had fully answered Plaintiff's FOIA requests and provided him with "all evidence necessary to prepare for such a hearing." *Id.* ¶¶ 127, 129. On December 12, Wilcock provided six documents—the evidence that he said the State Department would present during the hearing to justify the revocation—but noted that he could not "say with certainty that these comprise" all the information responsive to Plaintiff's FOIA request. *Id.* ¶ 131. Wilcock further stated that if a hearing date was not scheduled by December 31, the State Department would "close the file and consider the hearing waived." *Id.* ¶ 139. When Stapert insisted on a hearing after Plaintiff received the information he requested under FOIA, Wilcock agreed to a postponement and advised Stapert to contact him by March 31, 2015 if the FOIA requests were still pending. *Id.* ¶ 142.

After repeated back and forth over the course of months, on June 3, Wilcock told Stapert that if a hearing was not held by July 18, the case would be closed. Am. Compl. ¶ 148. About a week later, Wilcock told Plaintiff that if a hearing date was not scheduled within the next 24 hours, the case would be closed. *Id.* ¶ 149. The next day, Wilcock stated that Plaintiff had already been issued a new passport, "the remedy that would have been available should [Plaintiff] have prevailed at a hearing," and that "given our efforts to schedule a hearing and given also that the available remedy . . . has already been provided," the Consulate General has "deemed [Plaintiff's] request for a hearing waived and has closed the hearing file." *Id.* ¶ 151. After Plaintiff insisted that Wilcock's conduct had been improper, Wilcock stated on June 16 that the State Department was making a final offer of a hearing on June 26. *Id.* ¶ 153. Plaintiff

declined, and on June 29, 2015, Wilcock closed the case and offered no further hearing dates. *Id.* ¶¶ 153–54.

## B. Procedural History

On July 20, 2018—more than three years after Wilcock finally closed Plaintiff's revocation case—Plaintiff filed his initial complaint in this court, vaguely seeking injunctive and declaratory relief, as well as damages. Compl., ECF No. 1. The court directed Plaintiff to clarify "the specific type of injunctive or declaratory relief that he seeks," *see* Min. Order (Feb. 28, 2020), and Plaintiff thereafter filed an Amended Complaint in March 2021, ECF No. 46, which remains the operative complaint.

The Amended Complaint asserts five counts for various constitutional violations related to the alleged investigation into Plaintiff, revocation of his 2006 passport, and denial of a revocation hearing. Count One alleges that Defendants violated Plaintiff's Fourth Amendment rights "by conducting an unlawful investigation" and accessing his confidential financial information. Am. Compl. ¶ 162. Count Two asserts that Defendants violated the Fourteenth Amendment's Privileges or Immunities Clause by failing to hold a revocation hearing within 60 days. *Id.* ¶ 168. Count Three alleges that Defendants violated the Fifth Amendment's Due Process Clause by destroying the 2006 passport without first giving Plaintiff notice and the opportunity for a hearing. *Id.* ¶¶ 177–79. Count Four asserts that Defendants violated the Fifth and Fourteenth Amendments by revoking Plaintiff's passport without conducting a reasonably prudent investigation and without holding a prompt revocation hearing. *Id.* ¶¶ 185–86. Count Five alleges, among other things, that Defendants committed mail fraud, obstructed justice, and violated the First Amendment, as well as 42 U.S.C. §§ 1983, 1985(3), by threatening to arrest Plaintiff if he did not drop his complaint against the SSA, by investigating him, and by revoking

his passport in retaliation for his complaints about how the SSA treated Roxanne Ciopei. Am. Compl. ¶¶ 195, 197.

The Amended Complaint seeks two forms of relief. First, it seeks damages under *Bivens* against nine named Defendants in their individual capacities, as well as ten unnamed "John Doe" Defendants.[1] Second, it seeks declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, against the aforementioned Defendants in their official capacity, plus three additional official capacity Defendants and five agencies and agency components.[2] The official capacity and agency Defendants have moved to dismiss, *see* ECF No. 70, as have the individual capacity Defendants, *see* ECF No. 28; *see also* ECF No. 59 at 2–3 (reflecting the parties' agreement that the individual capacity Defendants' motion to dismiss the original complaint, ECF No. 28, be treated as a motion to dismiss the Amended Complaint).

While the Motions to Dismiss the Amended Complaint were still pending, Plaintiff filed a Motion for Leave to File a Second Amended Complaint, ECF No. 75, which both sets of Defendants opposed. *See* ECF Nos. 80, 83. Before the court could address any of the assorted motions, Plaintiff filed a Motion for Leave to File a Third Amended Complaint, *see* ECF No. 88. Not long after, Plaintiff filed a Motion to Substitute one of the defendants. *See* ECF No. 100.

---

[1]  The Defendants sued in their individual capacities are Patrick O'Carroll, Inspector General of the SSA; George Penn, Deputy Chief Counsel of the SSA; SSA Special Agents Douglas Roloff, Adrienne Messer, and Matthew Deuchler; Michele Thoren Bond and John Wilcock, officials with the State Department's Bureau of Consular Affairs; Jonathan Rolbin and Christine McLean, officials with the State Department's Law Enforcement Laision Division.

[2]  The additional official capacity Defendants are the Secretary of State, the Executive Director of the Bureau of Diplomatic Security, and the Administrator of the SSA. The agencies and agency components are the State Department, its Law Enforcement Laision Division and Bureau of Consular Affairs, the SSA, and its Office of the Inspector General.

In September 2024, the court denied both of Plaintiff's Motions for Leave to File, as well as the Motion to Substitute. *See* Min. Order No. 1 (Sept. 9, 2024); Min. Order No. 4 (Sept. 9, 2024). The court "allow[ed] Plaintiff a final opportunity to move for leave to file his Third Amended Complaint" and warned Plaintiff that his Proposed Third Amended Complaint "must include all claims for which he seeks relief" and substitute all defendants who he seeks to substitute. Min. Order No. 4 (Sept. 9, 2024). The court held the pending Motions to Dismiss in abeyance pending Plaintiff's new and final Motion for Leave to File a Third Amended Complaint. *Id.* That Motion has since been filed, *see* ECF No. 112, and both sets of Defendants have opposed. *See* ECF Nos. 122, 123.

Plaintiff's Proposed Third Amended Complaint treads both old and new ground. It again alleges various constitutional violations and asserts four claims for damages under *Bivens* and injunctive and declaratory relief. Specifically, it alleges violations of the Fourth Amendment (Count One), Procedural Due Process (Count Two); Equal Protection and Due Process (Count Three); and the First Amendment and mail fraud (Count Four). Proposed 3d Am. Compl. ¶¶ 200–46, ECF No. 112-1. It also asserts various new claims. Count Five alleges both a violation of the Administrative Procedure Act ("APA") and the tort of intentional infliction of emotional distress. *Id.* ¶¶ 247–54. Count Six asserts that Defendants violated the APA by failing to adhere to procedures set forth in the Title 22 of the Code of Federal Regulations. *Id.* ¶¶ 255–65. Count Seven alleges violations of 42 U.S.C. §§ 1983, 1985(3) and the Fourth Amendment, as well as the common law tort of malicious prosecution. *Id.* ¶¶ 266–77. Count Eight asserts that Defendants were negligent in revoking his passport without first conducting a competent search of Nevada court records for his name change order. *Id.* ¶¶ 278–86. Count Nine alleges that Defendants violated Due Process in revising the Title 22 of the Code of Federal

Regulations. *Id.* ¶¶ 287–93. Count Ten asserts various violations of the Freedom of Information Act. *Id.* ¶¶ 294–317.

The court will resolve the pending Motions to Dismiss the Amended Complaint and then determine whether to grant Plaintiff's Motion for Leave to File a Third Amended Complaint. But first, the court must decide Plaintiff's Motion for Recusal, ECF No. 114.

## II. MOTION FOR RECUSAL

Plaintiff contends that this court must recuse under 28 U.S.C. § 455(a) because it has shown bias to Defendants and unfairly applied a double standard to Plaintiff. *See* Pl.'s Mot. for Recusal at 3. In support, Plaintiff points to various decisions made by this court, including the court's handling of deadlines and its decision to allow Plaintiff's former attorney, Jennifer Wicks, to withdraw from representing Plaintiff. *See, e.g.*, Pl.'s Mot. at 6, 15–16, 26–27. Plaintiff's Motion fails because "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). "[O]nly in the rarest circumstances" can rulings "evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved." *Id.* And Plaintiff points to nothing which meets this high bar. Although the court has noted that Plaintiff uses vexatious language in his filings, the court's "expressions of . . . dissatisfaction" with a party's behavior during litigation is insufficient to establish bias. *Id.* at 555–56. And contrary to Plaintiff's assertion that the court has been significantly more generous in granting Defendants' extensions, the record reflects that the court has granted Plaintiff his fair share of extensions. *See, e.g.*, Min. Order (May 1, 2023); Min. Order (June 1, 2023); Min. Order (June 26, 2023); Min. Order (Dec. 5, 2023); Min. Order (Jan. 8, 2024); Min. Order (Oct. 31, 2024). Although the court was at times delayed in ruling on Plaintiff's motions, those delays reflect the complexity of this multi-

defendant litigation, the volume of motions filed by Plaintiff, and the court's busy criminal and civil docket—it does not demonstrate any bias against Plaintiff, which the court does not have. Plaintiff's Motion for Recusal, ECF No. 114, is therefore DENIED.

### III.    MOTIONS TO DISMISS

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), Plaintiff bears the burden of demonstrating that jurisdiction exists.  *See Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[3]

### A.  Individual Capacity Claims

Plaintiff's *Bivens* claims against the individual capacity defendants are barred by the statute of limitations.  To the extent that Plaintiff's *Bivens* claims are not time barred, a *Bivens* remedy is not available for any of those claims.  The court will therefore GRANT the Motion to Dismiss filed by the individual capacity Defendants, ECF No. 28.[4]

---

[3]  Plaintiff has also moved to compel production of a certified list of the contents of the administrative record.  *See* ECF No. 126.  But courts routinely decline to compel the production of the administrative record when it "is not necessary for the court's decision regarding a motion to dismiss."  *Connecticut v. Dep't of Interior*, 344 F. Supp. 3d 279, 294 (D.D.C. 2018) (cleaned up).  And as the court's analysis below makes clear, the court does not need the administrative record to determine that Plaintiff's damages claims are barred by the statute of limitations, that a *Bivens* remedy would not extend to those claims, and that Plaintiff lacks standing to seek declaratory and injunctive relief.  The Motion will therefore be DENIED.

[4]  To the extent Plaintiff has asserted any non-*Bivens* damages claim by making fleeting references in Count Five to 42 U.S.C. §§ 1983, 1985(3), mail fraud, obstruction of justice, and common law fraud, those claims would plainly fail because they too would be barred by the statute of limitations.  *See infra* Part III.A.a.  Moreover, criminal statutes prohibiting mail fraud and obstruction of justice "do not and cannot provide the basis for" a civil plaintiff's "cause[] of action."  *Masoud v. Suliman*, 816 F. Supp. 2d 77, 80 (D.D.C. 2011).  And § 1983 plainly "does not apply to federal officials acting under color of federal law."  *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1104 (D.C. Cir. 2005).

a. <u>Statute of Limitations</u>

Because Plaintiff brought his *Bivens* claims in the District of Columbia, this court looks to D.C. law for the applicable statute of limitations. *See Jones v. Kirchner*, 835 F.3d 74, 80–82 & n.7 (D.C. Cir. 2016); *see also Doe v. Dep't of Just.*, 753 F.2d 1092, 1114–15 (D.C. Cir. 1985). D.C. law provides a one-year limitation "for libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest or false imprisonment," 12 D.C. Code § 301(a)(4), and a three-year limitation for any claim "for which a limitation is not otherwise specifically prescribed." *Id.* § 301(a)(8). Because Plaintiffs' claims bear little to "no resemblance to any of the common-law torts listed" in § 301(a)(4), the three-year limitation set forth in § 301(a)(8) provides "the proper limitations period." *McClam v. Barry*, 697 F.2d 366, 372 (D.C. Cir. 1983). "Therefore, if [Plaintiff's] claims accrued before [July 20, 2015]—more than three years before he filed his [July 20, 2018] complaint—they would be barred by the statute of limitations." *Loumiet v. United States*, 828 F.3d 935, 947 (D.C. Cir. 2016).

D.C. Law "dictates the statute of limitations, but the timing of the accrual of [Plaintiff's] claims is a question of federal law." *Loumiet*, 828 F.3d at 947. "Ordinarily, accrual occurs when the plaintiff . . . can file suit and obtain relief." *Id.* (cleaned up). "Under this rule, often called the 'injury-occurrence rule,' a claim would 'accrue' when the injury occurs, even if undiscovered," because a party can file suit once they have been injured. *Robert L. Kroenlein Tr. ex rel. Alden v. Kirchhefer*, 764 F.3d 1268, 1275 (10th Cir. 2014) (cleaned up); *see also Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 670 & n.4 (2014). The D.C. Circuit has "recognized," however, "limited exceptions to the general rule that the statute of limitations begins to run at the time of the wrong." *Nw. Bank of Minn. Nat'l Ass'n v. FDIC*, 312 F.3d 447, 452 n.4 (D.C. Cir. 2002). In cases where "the injury is not of the sort that can readily be

discovered when it occurs, a cause of action accrues and the limitations period begins to run only when the plaintiff discovers, or with due diligence should have discovered, the injury that is the basis of the action." *Sprint Commc'ns v. FCC*, 76 F.3d 1221, 1226 (D.C. Cir. 1996) (cleaned up); *see also TRW Inc. v. Andrews*, 534 U.S. 19, 27 (2001) (indicating that this discovery rule is typically limited to cases involving latent injury, medical malpractice, and fraudulent concealment).

If the general rule that claims accrue at the time of injury applies to Plaintiff's claims, those claims are plainly time barred, as Plaintiff's last injury occurred on June 29, 2015, at the latest, when Wilcock made clear that Plaintiff would not receive a revocation hearing—nearly a month before July 20, 2015. Am. Compl. ¶ 154. Even if the discovery rule applied to Plaintiff's claims, those claims are still barred by the statute of limitations. Under that rule, "it is the discovery of the *injury*, 'not the other elements of a claim that starts the clock.'" *In re Navy Chaplaincy*, 69 F. Supp. 3d 249, 257 (D.D.C. 2014) (quoting *Rotella v. Wood*, 528 U.S. 549, 555–56 (2000)) (emphasis added). Here, Plaintiff was aware of all the alleged injuries before July 20, 2015. Specifically, he knew that SSA agents had gone to his house in May 2010, allegedly to threaten him into dropping his complaints about the SSA's treatment of Roxanne Ciopei. Am. Compl. ¶ 38. He was apparently aware before the end of 2013 that the agents had launched an investigation into him and obtained access to his personal information because Grand Jury subpoenas had been issued to his friends and family. *See id.* ¶¶ 44–45. He knew in August 2014 that his 2006 passport had been revoked, allegedly without adequate basis. *Id.* ¶ 60. He was aware in September 2014 that the passport had been destroyed without notice or the opportunity for a hearing. *Id.* ¶ 83. And he was aware that he had been denied a revocation hearing by June 2015 at the latest. *Id.* ¶ 154. That Plaintiff may have learned additional details

surrounding these events when he received information through his FOIA request on July 23, 2015 does not change the court's conclusion because "[a]ccrual does not wait until the injured party has access to or constructive knowledge of all the facts." *Sprint Commc'ns*, 76 F.3d at 1228.

Plaintiff urges in the alternative that the court equitably toll the statute of limitations. "But generally, 'District of Columbia law does not recognize an equitable tolling exception'" to the applicable statute of limitations, 12 D.C. Code § 301(a)(8). *Bundy v. Sessions*, 387 F. Supp. 3d 121, 125 (D.D.C. 2019) (quoting *Johnson v. Marcheta Inv'rs Ltd.*, 711 A.2d 109, 112 (D.C. 1998)). In any event, "[e]quitable tolling is 'appropriate only in rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'" *Robinson v. DHS Off. of Insp. Gen.*, 71 F.4th 51, 58 (D.C. Cir. 2023) (quoting *Head v. Wilson*, 792 F.3d 102, 111 (D.C. Cir. 2015)). "A party seeking equitable tolling must show: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Id.* (cleaned up). None of Plaintiff's contentions "meets the high threshold for applying this rare remedy." *Id.* (quoting *Jackson v. Modly*, 949 F.3d 763, 778 (D.C. Cir. 2020)).

Although Plaintiff may have preferred to wait to sue until after he had received more information through FOIA disclosures, the court has already explained that Plaintiff was aware of his injuries more than three years before he filed suit, and Plaintiff's desire for more information that may have strengthened his case is not the sort of extraordinary circumstance that would justify the rare remedy of equitable tolling. And, contrary to Plaintiff's suggestion, a FOIA request is not "an alternative course of action" that Plaintiff was "required to avail himself

of . . . as a precondition to filing suit." Pl.'s Suppl. Opp'n at 9, ECF No. 63-1 (quoting *Conley v. IBEW, Local 639*, 810 F.2d 912, 915 (9th Cir. 1987)).

Plaintiff also invokes fraudulent concealment. But to justify equitable tolling, "the fraudulent concealment must actually succeed in precluding the plaintiff from acquiring knowledge of the *material* facts." *Amobi v. D.C. Dep't of Corr.*, 755 F.3d 980, 988 (D.C. Cir. 2014) (emphasis added). The concealed information must be "so material in character that knowledge of a basis for, or intelligent prosecution of, the cause of action was precluded." *Id*. To the extent information was kept from Plaintiff through any fraudulent concealment, Plaintiff has not shown that such information was so material that he was precluded from suing; as explained above, Plaintiff was well aware of the most salient facts before July 20, 2015. Plaintiff also describes several health issues which he suggests should excuse his tardy filing, but he has not demonstrated that those health issues were so severe as to prevent him from managing his legal affairs. *Cf. Perry v. Dep't of State*, 669 F. Supp. 2d 60, 66 (D.D.C. 2009). The court has considered Plaintiffs' remaining contentions, which likewise fail to justify the rare remedy of equitable tolling.

b. *Bivens* Remedy

Even if his damages claims were not time barred, those claims would fail because *Bivens* does not extend to them. In *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), the Supreme Court "create[d] 'a cause of action under the Fourth Amendment' against federal agents who allegedly manacled the plaintiff and threatened his family while arresting him for narcotics violations." *Egbert v. Boule*, 596 U.S. 482, 490 (2022) (quoting *Bivens*, 403 U.S. at 397). "Over the following decade, the Court twice" extended *Bivens* and "fashioned new causes of action" against federal employees for Constitutional violations—"first, for a former

congressional staffer's Fifth Amendment sex-discrimination claim; and second, for a federal prisoner's inadequate-care claim under the Eighth Amendment." *Id.* at 490–91 (cleaned up).

"But in the [more than] 45 years since" the Supreme Court last expanded *Bivens*, it "'has consistently declined to extend *Bivens* to new contexts.'" *Jones v. U.S. Secret Serv.*, 143 F.4th 489, 493 (D.C. Cir. 2025) (quoting *Goldey v. Fields*, 606 U.S. 942, 945 (2025) (per curiam)). The Court has explained that the creation of causes of action "is a legislative endeavor," and the judiciary's "authority" to recognize new causes of action is "uncertain" "at best." *Egbert*, 596 U.S. at 491 (cleaned up). Thus, "recognizing a cause of action under *Bivens* is 'a disfavored judicial activity.'" *Id.* (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017)). "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Id.* at 492 (quoting *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020)).

Here, Plaintiff seeks to extend *Bivens* to a new context. "What constitutes a 'new context' is exceedingly broad." *Buchanan v. Barr*, 71 F.4th 1003, 1008 (D.C. Cir. 2023). "A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 589 U.S. at 103. "A new context arises if the plaintiff's case is different in a meaningful way from previous *Bivens* cases decided by the Supreme Court." *Jones*, 143 F.4th at 493–94 (cleaned up). An investigation into passport fraud, revocation of a passport, and denial of a passport revocation hearing are "notably different from an unlawful search and arrest by federal narcotics officers, [] from sex discrimination by a Congressman," and from inadequate care by prison officials. *Buchanan*, 71 F.4th at 1008 (cleaned up).

Because Plaintiff's claims arise in a new context, the court must ask if there is any reason—"even a single" one—"to pause before" extending *Bivens*. *Egbert*, 596 U.S. at 492

(cleaned up).  The answer here is an easy yes.  "As the Supreme Court has made clear in recent years, a *Bivens* cause of action may not lie where national security is at issue."  *Buchanan*, 71 F.4th at 1009 (cleaned up).  "Officers need not have been responding to an ongoing or imminent threat to national security to invoke national security as a special factor" counseling hesitation.  *Id.*  Instead, if altering the framework for legal liability in this new context might carry "*possible national security implications*," the court should hesitate to extend *Bivens*.  *Id.* (emphasis added).  Passport fraud investigations and revocations plainly implicate national security, as passports are the federal government's primary tool for controlling who may enter and leave the country, and for screening out individuals who may engage in terrorism, conduct espionage, or enter the country unlawfully.  Although Plaintiff himself may have posed no national security threat, other passport fraud cases clearly will.  "Faced with the risk of personal damages liability," passport investigators and regulators would be "more likely to second-guess difficult but necessary decisions concerning national-security policy."  *Id.* at 1009 (cleaned up).  Whether that is a worthwhile trade off is a decision for Congress to make.  Accordingly, the court is unwilling and unable to extend *Bivens* into this new context.  The Motion to Dismiss, ECF No. 28, the claims brought against the individual capacity Defendants will therefore be GRANTED.

## B.  Official Capacity Claims

The Motion to Dismiss, ECF No. 70, filed by the agency Defendants and the Defendants sued in their official capacity will also be GRANTED because Plaintiff lacks standing to obtain the declaratory and injunctive relief he seeks.[5]  A plaintiff "seek[ing] declaratory and injunctive relief . . . must show he is suffering an ongoing injury or faces an immediate threat of injury."

---

[5] To the extent Plaintiff seeks money damages against the agency Defendants or the Defendants sued in their official capacities, sovereign immunity bars those claims.  *See Clark v. Libr. of Cong.*, 750 F.2d 89, 102–03 (D.C. Cir. 1984).

*Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011). "'Past wrongs' may be used as 'evidence bearing on whether there is a real and immediate threat of repeated injury.'" *Jones*, 143 F.4th at 495 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). "But past exposure to illegal conduct, without more, is insufficient to establish standing for prospective relief." *Id.* (cleaned up).

Plaintiff has been issued a new passport and the passport investigation into him concluded in 2013 without prosecution. *See* Am. Compl. ¶¶ 53, 78. Given that the alleged illegal activity occurred several years ago and any confusion over the validity of Plaintiff's name change has been cleared up, Plaintiff has failed to "plausibly allege[] a substantial risk that [Defendants] will once again" investigate him for passport fraud, revoke and destroy his passport, or deny him a revocation hearing. *Jones*, 143 F.4th at 495. To the extent Plaintiff worries that the same harm he once experienced could befall others, that is insufficient because "to satisfy the requirements of Article III," plaintiffs "must allege that *they themselves* are likely to suffer future injury." *Fair Emp. Council of Greater Wash. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1273 (D.C. Cir. 1994) ("The reference to third parties, of course, does not help the tester plaintiffs establish standing.") (emphasis added). Plaintiff therefore lacks standing to seek declaratory and injunctive relief, so those claims must be dismissed.

## IV.     MOTION FOR LEAVE TO FILE

Under Federal Rule of Civil Procedure 15(a)(1), a plaintiff must obtain leave of court to amend his complaint if, as here, more than 21 days has passed since the defendants filed a motion to dismiss under Rule 12(b) and the defendants oppose amendment. Such leave "shall be freely given when justice so requires." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (cleaned up). But leave may be denied if there has been "undue delay . . . on the part of

the movant," *Atchinson v. District of Columbia*, 73 F.3d 418, 425 (D.C. Cir. 1996) (cleaned up), if allowing amendment would be "futile" because "the proposed claim would not survive a motion to dismiss," *Hettinga v. United States*, 677 F.3d 471, 480 (D.C. Cir. 2012), or if the proposed claim "would radically alter the scope and nature of the case and bears no more than a tangential relationship to the original action." *Mississippi Ass'n of Coops v. Farmers Home Admin.*, 139 F.R.D. 542, 544 (D.D.C. 1991); *see also Nat'l Treasury Emps. Union v. Helfer*, 53 F.3d 1289, 1295 (D.C. Cir. 1995) (affirming denial of Appellants' motion to amend the complaint because the new claims "bore 'only tangential relationship' to the original claim"). For the following reasons, the court will DENY Plaintiff leave to amend.

To the extent Counts One through Four of the Proposed Third Amended Complaint seek damages under *Bivens*, permitting amendment would be futile. For the reasons set forth above, those claims would be barred by the statute of limitations and no *Bivens* remedy would extend to them. *See supra* Part III.A. To the extent Counts Five, Six, and Eight seek damages for violations of the APA, those claims would likewise not survive a motion to dismiss because the APA's waiver of sovereign immunity "does not apply to actions for 'money damages.'" *Transohio Sav. Bank v. Dir., Off. of Thrift Super.*, 967 F.2d 598, 607 (D.C. Cir. 1992) (quoting 5 U.S.C. § 702). To the extent Counts Five, Seven, and Eight assert stand-alone tort claims or violations of 42 U.S.C. §§ 1983, 1985(3), those claims would be barred by the statute of limitations. *See* 12 D.C. Code § 301; *see also supra* Part III.A.a. To the extent Counts One through Nine seek declaratory and injunctive relief for constitutional or APA violations, Plaintiff would lack standing to pursue those claims because those violations occurred several years ago and Plaintiff "has not plausibly alleged a substantial risk that [Defendants] will once again"

investigate him, revoke his passport, or deny him a hearing.  *Jones*, 143 F.4th at 495; *see also*

*supra* Part III.B.

That leaves Count Ten—Plaintiff's FOIA claim.  Although this claim might survive a

motion to dismiss, the court will nevertheless deny leave to amend because Plaintiff waited until

November 2023—more than five years after commencing the suit—to first try to amend his

complaint to add a FOIA claim.  *See Elkins v. District of Columbia*, 690 F.3d 554, 565 (D.C. Cir.

2012) (affirming district court's conclusion that a new claim filed "nearly five years after the

initial complaint and after discovery had closed . . . was simply much too late to amend" (cleaned

up)); *Doe v. McMillan*, 566 F.2d 713, 720 (D.C. Cir. 1977) (affirming denial of leave to amend

after three years of delay).  That is the very picture of undue delay.

The court is especially hesitant to allow Plaintiff to assert his delayed FOIA claim

because it "bears no more than a tangential relationship to the original action."  *Mississippi Ass'n*

*of Cooperatives*, 139 F.R.D. at 544.  Indeed, courts in this district routinely refuse to allow

Plaintiffs to bring FOIA claims and non-FOIA claims in the same suit, even when the non-FOIA

claims are "based on the contents of the documents" requested under FOIA.  *Id.*; *see also*

*Scarlett v. Off. of Insp. Gen.*, No. 21-cv-819, 2022 WL 111236, at *3 (D.D.C. 2022).  That

approach makes sense here because whether FOIA officials conducted an adequate search for

records or correctly withheld records "do not involve the same evidence or substantially the same

legal issues" as whether consular officers and law enforcement agents illegally investigated

Plaintiff, unlawfully revoked his passport, or denied him a revocation hearing.  *Pinson v. DOJ*,

246 F. Supp. 3d 211, 231 (D.D.C. 2017).

Finally, although the court previously held that Plaintiff could not challenge the denial of

FOIA requests without having a FOIA claim in his complaint, *see* Min. Order (Nov. 16, 2023),

that holding in no way indicated that Plaintiff would be entitled to amend his complaint and add a FOIA claim. The court merely invited briefing on whether such an amendment would be proper and, after receiving such briefing, the court concludes it is not.

## V. CONCLUSION

For the foregoing reasons, the court will DENY Plaintiff's Motion for Recusal, ECF No. 114; DENY Plaintiff's Motion to Compel Production, ECF No. 126; GRANT Defendants' Motions to Dismiss, ECF Nos. 28, 70; and DENY Plaintiff's Motion for Leave to File a Third Amended Complaint, ECF No. 112. A separate order will follow.

Date: June 10, 2026

_Tanya S. Chutkan_
TANYA S. CHUTKAN
United States District Judge